, Lucas v. Crippen.

---

LUCAS v. CRIPPEN *et al.*

| 76 | 507 |
| f140 | 415 |
| 140 | 423 |

1. **Contract:** TRADE OF REAL ESTATE: FALSE REPRESENTATIONS: RESCISSION. False representations as to the value of real estate taken in trade for other property are no ground for a rescission of the contract, or for damages, where the complaining party did not rely upon them, and was not by them induced to make the trade. In this case it appears that plaintiff did not rely upon the alleged false representations, but upon the examination and report of his own agent.

2. ——— : ——— : ——— : OPINION AS TO VALUE. A charge of fraud can seldom be predicated on the mere expression of an opinion; and in this case, where the parties traded real estate, and a large portion of that taken by defendant had never been seen by either, and was of an uncertain value, the fact that defendant estimated the value of his property at more than it would bring in cash at the time, but not at more than he might reasonably suppose it would bring in the near future, *held* no ground for a rescission or for damages.

3. ——— : ——— : DEFECTIVE TITLE. The title to some of the land taken in an exchange of real estate was defective, but no breach of the covenants of seizin and for quiet enjoyment was shown. *Held* that these defects were no ground for a rescission of the contract or for damages.

*Appeal from Adams District Court.*—HON. JOHN W. HARVEY, Judge.

FILED, JANUARY 17, 1889.

THE transaction out of which this action arose was an exchange by plaintiff with defendant R. A. Crippen of certain real estate in the state of California for real estate and personal property in this state. The California property consisted of an undivided two-thirds of fifty-nine lots in the city of Los Angeles, 357 acres of land near Santa Monica, and 1,680 acres in Antelope valley. The Iowa real estate consisted of a large number of lots in the town of Corning, a number of tracts of land in Adams county, and twenty-nine lots in the town of Malvern. The parties were in California at the time of the transaction, and soon afterwards plaintiff removed to this state and took possession of the property obtained by him in the exchange. He now complains that he was deceived by certain false and fraudulent representations made by defendant, during the negotiation, as to the market value of the Iowa property, and other matters material to the transaction. The action is in equity; the prayer of the petition, which is in the alternative, being (1) for the rescission of the contract; and, (2) if rescission cannot be had, for damages. The district court after a full hearing, dismissed the petition, and plaintiff appeals.

*J. H. Lucas* and *H. F. Dale*, for appellant.

*T. M. Stuart*, for appellees.

REED, C. J.—The negotiation which led to the exchange was entered into about the first of February, 1886. On the twelfth of that month the parties signed a contract by which it was stipulated that one E. J. White, plaintiff's son-in-law, should make a preliminary examination of the Iowa property, and report the result thereof to plaintiff, who reserved the right either to then terminate the negotiation, or to proceed to make a personal examination of the property and determine therefrom whether he would make the trade. It was also stipulated in case he should determine, after receiving White's report, to make a personal examination, that the parties

should execute the conveyance and assignment necessary to pass the titles, and deposit the same in a bank in Los Angeles, to be delivered or returned, as plaintiff might determine after seeing the property. In pursuance of the contract, White went to Corning, and examined the property there, and lands situated in Adams county, except one eighty-acre tract, and he telegraphed his report to plaintiff, which was to the effect that all of the property examined by him, except five tracts, was as valuable as represented by Crippen, and that his estimate of the value of those tracts was less by twenty-one hundred dollars, in the aggregate, than that placed upon it by Crippen. The report also indicated that while he had not examined the eighty-acre tract and the lots in Malvern, his information with reference to them was favorable. It also gave his impression of Corning, and the information acquired by him as to the population of the place, and the standing of Crippen in the community, he having long resided there. When plaintiff received the report, the parties entered into further negotiations, which resulted in an agreement to make the exchange, without any further examination of the property by plaintiff, and they accordingly executed and delivered the conveyances. That agreement was also reduced to writing and signed, as an *addenda* to the former contract, and is as follows: "Being satisfied to make the trade hereinbefore recited, the parties have agreed to conclude the trade upon the report of E. J. White, the party making the preliminary examination, and have, this twenty-third day of February, 1886, agreed to exchange deeds and contracts as herein specified, which has been done as above provided, excepting said Crippen conveys an additional eighty acres, to-wit, the north one-half, southwest quarter, section 3, range 73, township 34, subject to a mortgage of $550, and interest from March 15, 1886, at six per cent., which has been so conveyed; and it is agreed that this contract remains in force so far as not in conflict with the deeds and assignments, and as a means of interpreting the transaction between the parties." The burden

of plaintiff's complaint is that he was induced to make the trade by the false and fraudulent representations of defendant as to the value of the Iowa property, and as to the population and prospects of the town of Corning, where the most of it is situated, and that the title to some of the property is defective. The claim of fraud is disposed of by two considerations, either of which is sufficient.

I. Plaintiff has failed to establish that he relied upon the alleged false representations, or was induced by them to make the trade. By the contract of the twelfth of February, he expressly reserved the right to make a personal examination of the property before going further in the matter; and he testified that he had no intention, before receiving the report from White, of making the trade without first inspecting the property. Up to that time he intended to rely on his own judgment as to values, and the other matters which he regarded as material. The contract of the twenty-third of February recites the considerations which induced him to forego the personal examination, and consummate the trade without having made it. White was his trusted agent, sent by him to make the examination, with secret instructions as to his course of procedure and the subjects and manner of his report; and he acted in accordance with those instructions. Upon receiving the report, plaintiff concluded that he was so well satisfied of the general truthfulness of defendant's former representations as to the value of the property that he would make the exchange, if defendant would include another tract of land to compensate for the difference between the two estimates, and that was agreed to. The contract recites that the agreement to con. summate the trade was based upon White's report. True, plaintiff testified that in making the exchange he accepted as true the former statements of defendant as to the values of the property, and was influ. enced by them; but the contract was his own deliberate act. He dictated its language, and signed it with

1. CONTRACT: trade of real estate: false representations: rescission.

full knowledge of its provisions. He is a lawyer of many years' practice, and is not ignorant of the meaning of words. He was anxious to dispose of his property, and had been offering it for months at prices much lower than those at which he estimated it in the trade, but had been unable to effect a sale. The trade turned out, however, to be an unfortunate one to him, for soon afterwards there came to be a great demand for real estate in that region, and there was a great advance in prices. Now, the language of the contract affords much stronger and more satisfactory evidence of the considerations which influenced him to make the exchange than his subsequent declarations, made after all the conditions and circumstances had changed. By it he declared that he was induced to consummate the trade by the information communicated to him by White, and that, we are convinced, is the truth with reference to the matter. That the law will afford no remedy for a false representation made in the course of negotiation, unless it operated as an inducement to the trade, is elementary, and we need not cite authorities in support of it. Unless the representation was relied upon by the one to whom it was made, and induced him to consummate the trade, he is not injured by it, however false it may have been.

II. But there is another consideration which is quite as conclusive of the case. A charge of fraud can seldom be predicated on the mere expression of an opinion. *Clark v. Ralls*, 50 Iowa, 275. Representations or statements as to the value of an article are generally of that character, and parties are not ordinarily warranted in relying upon them. That cases may arise in which such representations would be regarded as statements of fact is certainly true, but the general rule is otherwise; and it is a fact within the knowledge of all that there are few subjects upon which there is such diversity of opinion as that of the value of real estate. This is well illustrated in the present case. A number of witnesses, residents of Corning, were examined with reference to

2. ——:——:
——: opinion
as to value.

Lucas v. Crippen.

the value, at the time of the trade, of the property in question. They were all intelligent men, and were well acquainted with the property, yet in hardly a single instance did any two of them agree; the difference in some instances amounting to hundreds of dollars. That defendant represented the value of the property as greater than its actual cash-value is probably true, and that he would have been willing to accept a less price for it in a sale made upon the terms which ordinarily prevail in real-estate transactions in this state is also probably true; but we cannot find from the evidence that he was guilty of any fraud or deceit in the matter. His estimates of value were based upon his previous dealings in real estate; and, while the market for real estate in Iowa was depressed at the time, he indulged the belief that it would become better, and he was not willing to sacrifice the property by selling it at the prices which could then be obtained for it in cash, but believed that it was actually worth more, and that much more could ultimately be realized for it. Very clearly, we think the transaction was lacking in the essential elements of fraud. In addition to this, the representations were made in view of the transaction in which the parties were then engaged, which was an exchange of property. The value of much of the property which plaintiff proposed to trade was entirely speculative. The 1,680 acres in Antelope valley had never been seen by either of the parties, and they had but little information with reference to it. It was included in the transaction at six dollars per acre; yet the evidence leaves it doubtful whether it is of any intrinsic value, and whether anything can ever be realized for it. In transactions of that character men are prone to be somewhat extravagant in their statements of value, and they cannot be held to that strictness of accountability therefor which applies in dealings with reference to property having a substantial value. Considering the fact that defendant was taking that property at $10,800, while it was uncertain whether it was or ever would be worth anything, his estimate as to the value of what he

was exchanging for it was neither extravagant nor unreasonable.

III. After the trade, it was discovered that the chain of title to some of the Iowa property was defective.

3. ——:——: In some instances the defect consists in the
defective absence from the records of a conveyance
title. from some former owner. But, although the defects have existed for many years, no adverse claims have ever been made to the property, and the circumstances show satisfactorily that no adverse rights exist. In other cases defendant has obtained judgments quieting the title, which, under the contract, he had the right to do. It does not appear that in any instance there has been a breach of the covenants of seizin and for quiet enjoyment contained in the deeds from defendant to plaintiff. It is clear, therefore, that these defects afford no ground for either a rescission of the contract or the recovery of damages. Plaintiff also claimed in his petition to recover on an account for certain moneys received by defendant for his use, and to that claim defendant pleaded a counter-claim. There is nothing in this branch of the case, however, which demands our attention. The judgment will be

AFFIRMED.