HATCH *v.* SPOONER *et al.*

(*Supreme Court, General Term, First Department.* March 13, 1891.)

1. .DECEIT—FALSE REPRESENTATIONS—EVIDENCE.
 To sustain a recovery of damages for false representations alleged to have been made by defendants to induce plaintiff to purchase certain corporate stock, it is not necessary that plaintiff should testify that he relied solely on such representations, if, from the circumstances, it may fairly be presumed that he did rely on the representations in entering into the transaction.

2. SAME—EVIDENCE.
 The false representations of defendants, by which plaintiff alleged he was induced to purchase stock in the corporation, were that it was doing.a good business, and making 10 per cent. profit, and that with additional capital it would make more. The corporation had been in existence a very short time, and defendants superintended the manufacturing part of its business, but there was no evidence that they knew its financial condition, or that they intended to convey the impression that they had such knowledge. *Held,* that the jury were not justified in finding that defendants made the representations knowing them to be false, and a verdict for plaintiff for damages therefor could not be sustained.

Appeal from circuit court, New York county.

Action by Walter B. Hatch against Sarah C. Spooner, Ebenezer Spooner, and Edward A. Spooner. At the trial the complaint was dismissed as to the defendant Sarah C. Spooner, and the jury found a verdict for plaintiff against the other defendants. From the judgment for plaintiff entered on the verdict, and from an order denying their motion for a new trial, said defendants Ebenezer Spooner and Edward A. Spooner appeal.

Argued before VAN BRUNT, P. J., and DANIELS and O'BRIEN, JJ.

*Wetmore & Jenner,* (*Lawrence E. Sexton,* of counsel,) for appellants. *Thomas Bracken,* for respondent.

VAN BRUNT, P. J. This action was brought to recover damages which the plaintiff .claimed to have sustained by reason of certain representations made by the defendants to the plaintiff to induce the purchase of stock in a company, which representations were claimed to be false and fraudulent. The

complaint alleges that in January, 1884, the defendants were owners and holders of the capital stock of a company called the "Spooner Manufacturing Company," and that at this time the said company was insolvent, and unable to pay its debts, which the defendants well knew, and, for the purpose of obtaining money from the plaintiff, represented, and caused to be represented, to him, that the stock of the company was valuable stock, earning a good dividend, and that the same was a good stock to invest in, and was certain to return each year a net income of at least 10 per cent. on its capital stock over and above all expenses. The complaint further alleges that the defendants agreed that, in case he purchased stock in the company to the amount of $5,000, they would give him employment in the company; that the plaintiff, believing all the representations made by the defendants, and relying thereon, purchased from them $5,000 of the stock of said company, and entered into the employment of the company; that said representations were false, and upon the discovery of that fact the plaintiff tendered back the stock, and demanded the return of his money, which was refused. The defendants denied the representations, denied that the company was insolvent, and denied that the plaintiff was induced by such representatives to buy any stock. Upon the trial of the action it appeared that the defendants had general supervision of the manufacturing business of the corporation. There was no evidence tending to show that their position in the corporation necessarily required them to have knowledge of the financial affairs of the corporation. It also appeared, as testified to by the plaintiff's father, that the plaintiff and defendants were related, and that they knew that the father of the plaintiff was desirous of procuring a situation for his son, the plaintiff; and they wrote to him in respect thereto. He came down to New York, and saw the defendant Ebenezer Spooner at the factory of the corporation, and certain conversation was had, in which the defendant stated that he had thought it over, and he thought perhaps they might make a place for the plaintiff in that business. He said, however, he thought that plaintiff should buy $5,000 of the stock of the corporation at par, and go to work and learn the business. The plaintiff's father further testified that he said he wanted to know if it was all right, and if it was going to pay himself and his boy; to which Spooner replied that he wanted he should understand it was a good business, well established, and kept two to three hundred employes working all the year, and its cash sales were from $500 to $700 a day; that it was a good business, and paid; that it was a life business for his son, and a start such as very few young men could get an offer of; that they really needed a little more money, and, if they had $5,000, he thought they could make more than they were then making. He claimed that they were making a very big thing, and certainly paying 10 per cent., and with this additional capital he thought it would pay more. It is to be observed that the corporation had been at this time in existence but a short period. Upon cross-examination he varied his testimony somewhat. The witness said that Spooner did not state how much profit they were then actually making, but that the boy would get 10 per cent. for his money invested, if he put it in there; and he thought, if they added that $5,000 capital to the business, they might make 20 per cent. He further testified that he did not think they did say that it paid 10 per cent., but that it was making that, and could make more as soon as they could get more money, and he (witness) supposed that the profits up to that time were 10 per cent.; that they did not tell him they had declared dividends on any stock at that time, and he did not ask. He looked around the factory, and saw that they had a great deal of business, and a large number of employes. The plaintiff's father returned home the next day, and talked the matter over with his son, and a short time thereafter came down again, and saw both of the defendants, when the representations were repeated, substantially to the same effect. In a day or two the plaintiff's father returned home, and after reporting his conversations

with the defendants to his son, and talking the matter over, they concluded the offer was a good one, and the father gave the son the money with which to buy the necessary stock. The plaintiff came to New York, went directly to the factory of the company, paid his money to the treasurer of the company, received his certificate of stock, and entered into the employment of the company, where he remained some $3\frac{1}{2}$ years, with the exception of the time he was at home ill. Soon after entering into the employment of the company he was made one of its directors, and attended its meetings; and it was only after he had left his position in the employ of the company that this action was commenced. Evidence was offered on the part of plaintiff tending to show that the company did not do a paying business, and was not making 10 per cent., as it was claimed was represented to plaintiff's father, and by the father to the son. Upon the termination of the plaintiff's case, a motion to dismiss was made upon various grounds, among which were that there was no evidence that the defendants knew these statements, or any statements made by them, to be false, and that there was no evidence that these statements, or any of them, were made with intent to deceive, or did deceive, the plaintiff, or that the plaintiff relied upon these statements. Other points were raised which it is not necessary to consider here. The motion was denied, and an exception taken, and the defendants introduced evidence upon their behalf tending to contradict the evidence on behalf of the plaintiff that these representations were made, and that any statement which the defendants made to the plaintiff's father in regard to the condition of the company were known to the defendants to be false, or made with intent to deceive. Upon the termination of the defendants' case, the motion to dismiss was repeated. It was denied, and an exception taken. The case was submitted to the jury, who found a verdict in favor of the plaintiff; and from the judgment thereupon entered, and from the order denying a motion for a new trial, this appeal is taken.

It is claimed upon the part of the defendants that, because the plaintiff nowhere testified that he relied solely upon these statements testified to by his father, the jury could not find a verdict in his favor. We do not understand this position to be well taken. If, from the nature of the transaction, the relation of the parties, and the circumstances surrounding the transaction, it may fairly be presumed that the plaintiff relied upon the representations in entering into the transaction, and that they were the inducing cause, the mere fact that he has or has not sworn to the conclusion that he relied upon the representations is of little moment; in fact, it is only of recent years that such questions were permitted. But there is a more serious question, arising from the claim that there is no evidence before the court that the defendants knew the statements, or any of them, made by them, to be false. In the case of *Morris* v. *Talcott*, 96 N. Y. 100, the court laid down this rule in respect to the nature of the proof of *scienter* in cases of the description of the one at bar. They say: "The fraud charged against the defendant herein is of the nature of a crime, and cannot be presumed, but must be established by evidence. *Henry* v. *Henry*, 8 Barb. 592; *Ward* v. *Center*, 3 Johns. 281; *Jackson* v. *King*, 4 Cow. 207. While it is true that it may be proved by circumstantial evidence, and the inferences legitimately deducible therefrom, yet the defendant is entitled, in a judicial consideration of the proofs, to the application of the rule that the presumptions of the law are in favor of the innocence of the person accused. A party, therefore, relying upon the establishment of a cause of action or a right to a remedy against another, based upon the alleged commission of a fraud by such person, must show affirmatively facts and circumstances necessarily tending to establish the probability of guilt, in order to maintain his claim. When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of the accused party as with his guilt, the meaning must be ascribed to it which ac-

cords with his innocence, rather than that which imputes to him a criminal intent." Applying this principle to the case at bar, there is no evidence which shows that the defendants necessarily knew the financial condition of this corporation, or that they intended to convey to the plaintiff's father the impression that they did. There is no evidence that they had anything to do with the financial affairs of the corporation, but, rather, that they had the superintendence of the manufacturing part of its business; and it further appears that the representations which they made to the plaintiff's father must necessarily have been matters of opinion, because they were representations of what the business of the corporation would amount to, and hence necessarily dependent upon future contingencies. If, from the situation of these defendants, the necessary inference could be drawn that they did know in regard to the financial affairs of the corporation, then, perhaps, a different rule might apply; but it appears that the whole of these representations were based upon their knowledge of the manufacturing department of this corporation, and there is no pretence that they knew or represented that they knew of its financial condition, so that they could be said to have intended to convey the impression that they knew of their own knowledge whereof they spoke. In cases of this description, fraud must be established by evidence necessarily leading to that conclusion. If an inference consistent with innocence may be deduced from the proofs, such inference must be drawn, as matter of law; and a jury cannot be permitted to speculate upon the question as to whether fraud did or did not exist. In the language of *Morris* v. *Talcott*, the plaintiff must show affirmatively facts and circumstances necessarily tending to establish the probability of guilt, in order to maintain his action. We think that the evidence in the case at bar fails to come up to this standard; and that there is no evidence, even if the defendants made the representations to the full extent claimed by the plaintiff,—upon which question there is grave doubt,—that the defendants knew or had reason to believe them to be false.

There is another question in regard to the variance between the pleadings and the proof; the complaint alleging that the stock was bought from the defendants, whereas the evidence seems to show that it was bought from the corporation. While, upon this appeal, such a variance may be of no particular moment, in view of the conclusion arrived at on the other points of the case, yet still it is a matter which may need some consideration before a retrial of this case is had. Upon the whole case we are of opinion that there was no evidence which justified the jury in finding that the defendants made these representations knowing them to be false, and the judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.