[L. A. No. 8061. In Bank.—September 28, 1925.]

LEWIS C. HUNTER, Individually and as Administrator, etc., Respondent, v. WILLIAM E. McKENZIE et al., Appellants.

[1] Fraud—Exchange of Real Properties—Fraudulent Representations—Action for Damages—Pari Delicto.—Where the plaintiff's cause of action is not one for rescission, but is one for damages arising out of the false and fraudulent representations made by the defendants, and which it is alleged were the inducing cause of entering into an agreement of exchange of real properties with the defendants, and the defendants, in their answer and counterclaim, likewise stand upon the contract and do not by any pleading, appropriate or otherwise, seek a rescission of the contract because of the inclusion in the contract of a lot which plaintiff and his wife had theretofore conveyed to a third person, the doctrine of *pari delicto* has no application; and it is not error for the trial court to refuse to instruct the jury, at defendants' request, that plaintiff and his wife, at the time they were negotiating the exchange in question, were bound to know, and in law were conclusively presumed to know, that they had theretofore conveyed said lot to a third person and that their failure to advise the defendants of that fact, coupled with the fact that they had included said lot in the list of properties which they proffered for exchange, was, as a matter of fact, a fraud, concealment, and deceit which deprived plaintiff of a right of action for damages arising out of the facts pleaded in plaintiff's complaint and that the verdict must be for the defendants and against plaintiff.

[2] Id.—Inclusion of Lot Previously Disposed of—Damage—Pleading.—Where the acts of the plaintiff and his wife in including in the agreement of exchange such lot which they had theretofore conveyed to a third person is pleaded in the answer of the defendants, but there is no allegation in such answer, nor is there any showing in the proof adduced by the defendants upon the trial of the case that they were in anywise damaged by the alleged misrepresentation of plaintiff and his wife, no defense is pleaded or proven, as fraud without damage is no defense.

[3] Id.—Actionable Fraud—Recoupment of Damages.—If one party to a contract during the negotiation thereof perpetrates an action-

1. See 12 Cal. Jur. 779.
2. Necessity of showing damages in action for fraud, note, 35 L. R. A. (N. S.) 189. See, also, 12 Cal. Jur. 765; 12 R. C. L. 239.
3. See 12 Cal. Jur. 782; 12 R. C. L. 409.

able fraud upon the other party to the contract concerning the subject matter of the contract, the latter party, even though he does not seek to exercise his right to repudiate the contract on the discovery of the fraud, may recoup his damages therefor in any action brought by the guilty party for damages resulting from the alleged false and fraudulent representations of the latter party to the contract.

[4] ID.—ACTIONABLE FRAUD OF PLAINTIFF—PLEADING—MITIGATION OF DAMAGES—INSTRUCTIONS.—Conceding that the misrepresentations of plaintiff and his wife as to their title to one of the lots included in the agreement of exchange was tantamount in law to the perpetration of an actionable fraud upon defendants, and conceding further that if the defendants had properly pleaded that fact as a counterclaim or by way of set-off or recoupment they would have been entitled, had they so requested, to an instruction directing the jury to take into consideration the claimed fraud of plaintiff and his wife and the value of the lot in question, not for the purpose of impairing plaintiff's right of recovery, but merely in mitigation of the damages, if any, shown to have been suffered by plaintiff and his wife as the result of the alleged false and fraudulent representations of the defendants, this was all they were entitled to in the charge of the court, and not having requested such a charge they will not be heard to complain on appeal.

[5] ID.—RELIANCE UPON FALSE REPRESENTATIONS—ABSENCE OF DIRECT CONNECTION BETWEEN PARTIES.—While some connection, direct or indirect, between the party charged with making the false representations and the party relying thereon must be shown, it is not essential, in support of a cause of action for damages resulting from false representations that the false representations be shown to have been made directly to the party claiming to have relied upon them.

[6] ID. — RELIANCE UPON FALSE REPRESENTATIONS — CIRCUMSTANTIAL PROOF.—While it is incumbent upon the party seeking to recover in an action for deceit, founded upon false representations, to show that he relied upon and was influenced by them, in such an action by a husband individually and as administrator of his deceased wife's estate it is not essential to produce direct evidence that she relied upon the false representations of the defendants, but the fact of reliance upon such false representations may be inferred from the circumstances attending the transaction, which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than direct testimony to the same effect.

---

6.  See 12 Cal. Jur. 827.

[7] ID.—EXECUTED AGREEMENT OF EXCHANGE — EVIDENCE — MEASURE OF DAMAGES—INSTRUCTIONS.—In an action for deceit, founded upon false representations of the defendants in connection with an agreement of exchange of certain real properties, where the evidence shows that before the filing of defendants' answer and more than six months before the trial of the case the property received from defendants had been partitioned and sold in an action instituted by the defendants against plaintiff and his wife, that at the partition sale the defendant husband became the purchaser, and that as the result of such partition and sale the defendants received in full the equivalent of the unpaid balance due from plaintiff and his wife under the terms of the contract of exchange, it sufficiently appears that, even conceding such contract to have been executory at its inception, it became an executed contract; and, therefore, it is proper to instruct the jury, in effect, that the measure of the plaintiff's damages, if any, is the difference between the actual value of the property proffered and passed in exchange to plaintiff and his wife by the defendants and its value, had it been as represented by the defendants.

[8] ID.—ENCUMBRANCES ON PROPERTY—PAYMENT—RECOUPMENT—EVIDENCE—INSTRUCTIONS.—In such action, the trial court does not err to the prejudice of defendants in failing to charge the jury that, when assessing plaintiff's damages, they are to make proper allowance to the defendants for the moneys alleged to have been expended by defendants in releasing certain mortgage encumbrances and tax liens standing against the property received by them in exchange at the time of the consummation of the contract, where there is some evidence, apparently undisputed, to the effect that said mortgage encumbrances and tax liens had been satisfied, and counsel for defendants fail to request an instruction covering the subject matter of recoupment, and to which the defendants would be entitled if said mortgage encumbrances and tax liens had not in fact been satisfied.

[9] ID.—ABSENCE OF FRAUD—WRITTEN STATEMENT BY DEFENDANTS—SIGNATURE THROUGH MISREPRESENTATION — EVIDENCE — FINDING—APPEAL.—In such action, the jury, upon a substantial conflict in the evidence, having determined that a certain statement signed by plaintiff and his wife, subsequent to their arrival in this state, to the effect that they had examined the property received by them in the exchange and found the same to be in every respect as represented by the defendants and that they were perfectly satisfied with the transaction, was presented for signature at a time when the defendant husband was about to leave the state, that plaintiff told him that he had not had an opportunity

to examine the property and, because of ill health, could not do so, whereupon said defendant said he just wanted the statement for his files in the east and that he would guarantee that plaintiff and his wife would find everything to be just as he had represented, and that, relying upon these assurances, plaintiff signed the statement and induced his wife to sign it, such determination was conclusive on appeal.

(1) 13 C. J., p. 502, n. 57.   (2) 26 C. J., p. 1167, n. 62.   (3) 27 C. J., p. 92, n. 46.   (4) 27 C. J., p. 109, n. 95.   (5) 26 C. J., p. 1140, n. 92.   (6) 26 C. J., p. 1141, n. 97.   (7) 27 C. J., p. 109, n. 92.   (8) 38 Cyc., p. 1693, n. 55.   (9) 4 C. J., p. 858, n. 3.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Meserve & Meserve for Appellants.

Victor T. Watkins and Anderson & Anderson for Respondent.

LENNON, J.—This is an action for damages for deceit. It arises out of an agreement for the exchange of real properties. Briefly stated, the facts pleaded in plaintiff's complaint are these: In June, 1920, at Detroit, Michigan, the plaintiff, Lewis C. Hunter, and his wife, Alma J. Hunter, who has since died, entered into a written contract with the defendants, William E. McKenzie, and his wife, Minnie B. McKenzie, for the exchange of several parcels of real property owned by the Hunters, situated in the city of Detroit, for a one-half interest in improved real property, situated in the city of Los Angeles, owned by the McKenzies and known as the Fowler Apartments. Upon the consummation of the agreement the Hunters took possession and assumed full control of the said Fowler Apartments. Certain false representations as to the value of the property situated in Los Angeles and the income thereof, the value of the furniture therein, the cost of operating the same and the amount of the taxes levied and assessed against the said property were made by the defendant, William E. McKenzie, acting for himself and as the agent of his wife, to the plaintiff, Lewis C. Hunter, and his wife, Alma J. Hunter, for the purpose

of inducing the Hunters to make the exchange. Such representations were known by the defendants to be false at the time they were made. At the time of the negotiation and execution of the contract in controversy Hunter and his wife were in very poor health and desired to come to California. Prior to the negotiation and execution of the contract of exchange the plaintiff, Lewis C. Hunter, and his wife had known the defendant, William E. McKenzie, for many years and they relied upon his representations and statements concerning the property in suit and believed him to be a man of honesty and integrity. The Hunters relied wholly upon the representations of the defendant, McKenzie, and the said representations were the inducing cause which prompted the Hunters to enter into the contract. Aside from the representations of the defendant, William E. McKenzie, the Hunters had no knowledge of property values in the state of California nor any knowledge of the value and condition of the particular property situated in Los Angeles and which was proffered in exchange by the defendants. The property conveyed to the defendants by the Hunters in consummation of the contract was of the fair and reasonable value it was represented by them to be when the contract was being negotiated. The plaintiffs have paid to the defendants all sums due and payable under the terms of the contract of exchange and have been ready and willing at all times to perform all of the terms and covenants of said contract.

The answer of the defendants denies all of the material allegations of the complaint and as a special defense alleges, in substance, that the plaintiff, Lewis C. Hunter, and his wife signed a written statement subsequent to the consummation of the contract, to the effect that they had examined the Los Angeles property and found the same to be as represented by the defendants and that they were perfectly satisfied with the transaction; that the plaintiff had represented that all of the properties situated in Detroit, which were conveyed to defendants in consummation of the contract, were owned by the plaintiff and were free of encumbrances, whereas, in truth and in fact, one lot or parcel of land included in said Detroit property prior to the negotiation and consummation of the contract had been conveyed to another person; that title to said lot was not in plaintiff, Hunter, or his wife immediately before and at the time of the consummation of the contract. Defendants' answer further al-

leged in support of the pleaded special defense and by way
of counterclaim that certain abstracts had not been fur-
nished, as required by the contract, and that some of the
property conveyed by the Hunters was encumbered by un-
satisfied mechanics' liens and tax liens. Finally it was al-
leged upon behalf of the defendants that on August 15,
1920, there was a full settlement and adjustment of the dif-
ferences existing between the parties to the contract, with·
full knowledge at that time, on the part of the Hunters, con-
cerning the actual value and condition of the property prof-
fered in exchange by the defendants. The defendants
prayed that the plaintiff take nothing by the action and
that the defendants have judgment against the plaintiff for
the sum needed to release the mechanics' and tax liens, which
rested upon a part of the Detroit property conveyed to the
defendants.

The cause was tried before a jury. Much evidence was ad-
duced *pro* and *con* in response to the issues made by the
pleadings. There is a substantial conflict in the evidence ad-
duced upon the whole case concerning the value and income
of the Los Angeles property. And the evidence is likewise
in conflict concerning the settlement which was alleged to
have been made prior to the filing of the suit and so is
the evidence in conflict as to what was said and done by all
of the parties to the contract subsequent to its consummation
and subsequent to the arrival of the Hunters in Los Angeles.
The evidence shows, however, without conflict that the
Hunters, prior to the time of the negotiation and consumma-
tion of the contract, conveyed by grant deed a certain lot of
land, of the approximate value of $800, to certain persons,
viz., A. W. and J. J. Shupe. Said lot was included in the
several parcels of land situated in Detroit which had been
conveyed by the Hunters to the defendants in exchange for
the latters' property in Los Angeles. At the time the ex-
change was consummated the Hunters did not have title to
this particular lot of land. It was explained, however, by
the plaintiff, Lewis C. Hunter, who had been called as a
witness in his own behalf and when testifying upon cross-
examination, that he had inadvertently failed to note the
transfer of the lot in question to the Shupes on the map of
lands, which he owned in Detroit; that the said lot ever since
then has been assessed to him; that at all times since then

he paid the taxes thereon and that at the time he entered into the negotiations with the defendants for the exchange and at the time of the exchange he had forgotten the transfer to the Shupes. Upon the verdict of the jury in favor of the plaintiff in the sum of $25,000, which impliedly found the pleaded and evidentiary facts of the plaintiff's case to be true, judgment was entered for the plaintiff, from which the defendants have appealed.

[1] The primary point presented in support of the appeal is that the trial court refused, at the request of the defendants, to charge the jury, in effect, that the Hunters, at the time they were negotiating the exchange in question, were bound to know, and in law were conclusively presumed to know, that they had theretofore conveyed one of the lots of land involved in the exchange to the Shupes and that their failure to advise the defendant, William E. McKenzie, of that fact, coupled with the fact that they had included said lot in the list of properties which they proffered for exchange, was, as a matter of fact, a fraud, concealment, and deceit which deprived the plaintiff of a right of action for damages arising out of the facts pleaded in the plaintiff's complaint, and that because of the making of the conveyance of said lot to the Shupes the verdict of the jury must be for the defendants and against the plaintiff. Three other instructions similar in purpose and effect were requested by the defendants and refused by the trial judge. Conceding without deciding that the proposed instructions correctly stated the law upon the subject of fraud and concealment resulting from misrepresentations negligently and carelessly, even though innocently, made, they were not applicable to the situation presented by the pleadings and proof in the instant case. The plaintiff's cause of action, as pleaded, was one for damages arising out of false and fraudulent representations alleged to have been made by the defendants and which it was alleged were the inducing cause of the Hunters entering into the contract. The plaintiff was not seeking a rescission of the contract, but rather was standing upon the contract and seeking only damages resulting from the fraud which induced its making. The defendants, it will be noted, were likewise standing upon the contract and did not by any pleading, appropriate or otherwise, seek a rescission of the contract. Their defense as pleaded was, in substance

and effect, merely that the plaintiff and his wife had perpetrated a fraud upon them by misrepresentations concerning their title in and to one of the lots of land which they had proffered in exchange for the defendants' Los Angeles property and that therefore, even though they had perpetrated the pleaded fraud upon the Hunters, all of the parties to the transaction were *in pari delicto* in the consummation of a fraudulent transaction and consequently the law would not afford relief to any of the parties, but would leave them where it found them.

[2] Moreover, while the alleged fraud of the Hunters was pleaded as a defense to the action, there was no allegation in the answer of the defendants nor was there any showing in the proof adduced by the defendants upon the trial of the case that they were in anywise damaged by the misrepresentations of the Hunters, and fraud without damage is not a defense. (*Holton* v. *Noble,* 83 Cal. 7 [23 Pac. 58].) The numerous cases cited by counsel for appellants do not sustain their contention that the doctrine of *pari delicto* has application to the situation presented by the pleadings and the evidence in the instant case. It is needless to enter upon a detailed discussion of those cases. It will suffice to say that those cases, generally speaking, may be segregated into two classes, viz.: those which deal with the doctrine of *pari delicto* only where the parties to a contract, intrinsically illegal, are shown to be equally at fault in the making of the contract; or where the contract in suit is based upon considerations contrary to public policy. The contract in question here, obviously, was one which the parties thereto might lawfully enter into and, clearly, no question of the violation of public policy was involved in its making. The question, consequently, of whether or not the parties to the contract are *in pari delicto* is not pertinent to the case in hand. (*McDonald* v. *Pacific Debenture Co.,* 146 Cal. 667 [80 Pac. 1090].)

We have, then, before us a case in which the pleadings and the proof show merely an action for damages resulting from the alleged fraudulent representations of the defendants which was met by the defendants, without repudiating the contract, by the defense, imperfectly pleaded, that the Hunters were also guilty of a fraududent misrepresentation. [3] It is the general rule that if one party to a contract

during the negotiation thereof perpetrates an actionable fraud upon the other party to the contract concerning the subject matter of the contract, the latter party, even though he does not seek to exercise his right to repudiate the contract on the discovery of the fraud may recoup his damages therefor in any action brought by the guilty party for damages resulting from the alleged false and fraudulent representations of the latter party to the contract. (1 Sutherland on Damages, 4th ed., sec. 179; *Holton* v. *Noble, supra; Barbour* v. *Flick,* 126 Cal. 628 [59 Pac. 122]; *Chandler* v. *Childs,* 42 Mich. 128 [3 N. W. 297]; *Carey* v. *Guillow,* 105 Mass. 18 [7 Am. Rep. 494].)

[4] Conceding for the purpose of discussion that the Hunters' misrepresentation as to their title to one of the lots involved in the exchange was tantamount in law to the perpetration of an actionable fraud upon the defendants, it may be further conceded that if the defendants had properly pleaded that fact as a counterclaim or by way of set-off or recoupment they would have been entitled, had they so requested, to an instruction from the trial court directing the jury to take into consideration the claimed fraud of the Hunters and the value of the lot in question, not for the purpose of impairing the plaintiff's right of recovery, but merely in mitigation of the damages, if any, shown to have been suffered by the Hunters as the result of the alleged false and fraudulent representations of the defendants. This much and no more, even though the defense of recoupment had been pleaded and relied upon, was all that the defendants were entitled to in the charge of the court, and not having requested such a charge they will not now be heard to complain.

It is not disputed that the evidence upon the entire case is sufficient to support the verdict and judgment in favor of the plaintiff, Lewis C. Hunter. It is insisted, however, that there is no evidence in the record sufficiently supporting the judgment in favor of said Lewis C. Hunter as administrator with the will annexed of the estate of his deceased wife. The answer to this contention is to be found in the record before us, which shows much evidence to the effect that the false representations alleged and relied upon for the plaintiff's cause of action and upon which the verdict and judgment may be said to be largely rested were made by the de-

fendant, William E. McKenzie, to the plaintiff, Lewis C. Hunter, in the presence of his wife during the preliminary negotiations which culminated in the contract in controversy. While Mrs. Hunter apparently did not participate in the conversations constituting these negotiations, and while it does not appear that such conversations were directly addressed to her, nevertheless she was an interested and a necessary party to the negotiations, and it may be fairly inferred from the evidence adduced upon this phase of the case that the alleged misrepresentations were addressed to and were intended as a matter of inducement to her as well as to her husband. [5] While some connection, of course, direct or indirect, between the party charged with making the false representations and the party relying thereon must be shown, it is not essential, however, in support of a cause of action for damages resulting from false representations that the false representations be shown to have been made directly to the party claiming to have relied upon them. (*Carvill* v. *Jacks*, 43 Ark. 454; *Alexander* v. *Beresford*, 27 Miss. 747 [61 Am. Dec. 538].) Upon this phase of the case it is insisted further that there is no evidence that Mrs. Hunter relied upon the alleged false representations made to her husband in her presence and that, therefore, the cause of action pleaded and prosecuted in her behalf must fail. [6] Of course it is incumbent upon the party seeking to recover in an action for deceit, founded upon false representations, to show that he relied upon and was influenced by them. True, there is no direct evidence showing that Mrs. Hunter relied and acted upon the alleged and found false representations, still it was not essential to a cause of action in her behalf to produce direct evidence that she relied upon such false representations. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect. (*Lucas* v. *Crippen*, 76 Iowa, 507 [41 N. W. 205]; *Taylor* v. *Guest*, 58 N. Y. 262; *Baker* v. *Hallam*, 103 Iowa, 43 [72 N. W. 419]; *Kline* v. *Baker*, 106 Mass. 61; *Hatch* v. *Spooner*, 59 Hun, 625 [13 N. Y. Supp. 642].) We are satisfied that it may be fairly inferred from the evidence

concerning the nature of the transaction in suit, the relation of the parties, and the circumstances surrounding the entire transaction as shown by the record before us that Mrs. Hunter relied upon and was induced to enter into the contract in question by the false representations of the defendant. It follows from what we have just said that there was no error, as is contended on behalf of the defendants, in the refusal of the trial court to give the instruction requested on behalf of the defendants, to the effect that there was no evidence in the case of any kind as to what influenced Mrs. Hunter to enter into the contract of exchange in question and that, therefore, the verdict of the jury, regardless of what it might be as to the plaintiff, Lewis C. Hunter, must be in favor of the defendants as against Lewis C. Hunter as administrator.

[7] The trial court in its charge to the jury instructed, in effect, that the measure of the plaintiff's damages, if any, was the difference between the actual value of the property proffered and passed in exchange to the Hunters by the defendants and its value, had it been as represented by the defendants. It is conceded that the instruction referred to correctly states the law, as enunciated in *Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729], when applied, in actions for damages for deceit, to executed contracts, but it is insisted that it has no application to the measure of damages in the instant case because the contract in suit was executory, to the extent that a final payment in the sum of $22,500, which, under the terms of the contract of exchange, was to be made in cash by the Hunters to the defendants, had never been paid by the Hunters. Assuming the contract of exchange to have been executory at its inception, still, in view of the situation developed by the evidence upon this phase of the case, we need not stop to discuss the question of what the measure of damages should be in actions for deceit arising out of executory contracts. In this behalf the record shows the undisputed fact that before the filing of the defendants' answer and more than six months before the case came on for trial the Fowler Apartments had been partitioned and sold, in an action instituted by the defendants against the Hunters, and, at the partition sale, the defendant, William E. McKenzie, became the purchaser at the price of $150,000, of which $75,000 was paid in cash and the balance by the

assumption of encumbrances against the property amounting to the sum of $75,000. It further sufficiently appears from the evidence that as the result of said partition and sale the defendants received in full the equivalent of the unpaid balance of $22,500, which was due to them from the Hunters under the terms of the contract of exchange.

It will thus be seen that the contract of exchange, even conceding it to have been executory at its inception, ultimately became by the enforced action of the defendants, in legal effect, an executed contract. It follows that the trial court's instruction to the jury concerning the measure of damages was correctly applied to the situation in hand at the time of the trial. That counsel for the defendants acquiesced at the time of the trial in this view is made manifest, we think, by the fact that no instruction concerning the measure of damages was requested upon behalf of the defendants based upon the theory that the contract in suit was executory.

[8] It is further contended, in effect, that the trial court erred to the prejudice of the defendants in failing to charge the jury that, when assessing the plaintiff's damages, they were to make proper allowance to the defendants for the moneys alleged to have been expended by them in releasing certain mortgage encumbrances and tax liens standing against the Detroit property at the time of the consummation of the contract of exchange. In response to this contention it will suffice, we think, to say that there is some evidence in the record, standing apparently undisputed, to the effect that said mortgage encumbrances and tax liens had been satisfied and this fact, doubtless, explains why counsel for the defendants failed to request an instruction covering the subject matter of recoupment, and to which the defendants would have been entitled, if said mortgage encumbrances and tax liens had not in fact been satisfied.

[9] It is not disputed that the Hunters, subsequent to their arrival in Los Angeles, signed a statement to the effect that they had examined the Fowler Apartments and found the same to be in every respect as represented by the defendant, William E. McKenzie, and that they were perfectly satisfied with the transaction. Supplementing the admission in evidence of said statement is the testimony of a witness for the defendants, who was in charge of the Fowler Apart-

ments on July 20, 1920, to the effect that the Hunters in the presence and hearing of the witness looked over the financial reports of the property for the previous month and expressed themselves as satisfied and anxious to take over the property immediately. In this connection there was also the testimony of the defendant, William E. McKenzie, as to what was said and done at this time tending to support the allegations of the answer of the defendants upon this phase of the case. The testimony of the plaintiff, Lewis C. Hunter, in substance was that the defendant, McKenzie, when he was about to leave Los Angeles for Detroit presented the statement in question for the signatures of the Hunters; that Hunter thereupon told McKenzie that he, Hunter, had not had an opportunity to examine the property and because of ill health could not do so, whereupon McKenzie, said he just wanted the statement for his files in Detroit and that he would guarantee that the Hunters would find everything to be just as he had represented. Relying upon these assurances, Hunter signed and prevailed upon his wife to sign the instrument in question. Upon this phase of the case the court instructed the jury, in effect, that if they should find that the statement in question was signed under the conditions as claimed by the defendants in their answer, and as testified to by the witnesses for the defense, then their verdict should be for the defendants. In this connection the trial court also charged the jury that the burden of proof rested upon the plaintiff. The jury having, upon a substantial conflict in the evidence, resolved the issue in favor of the plaintiff, we are, therefore, precluded from a further consideration of the matter upon this appeal.

The remaining points made in support of the appeal do not require discussion.

The judgment is affirmed.

Richards, J., Shenk, J., Seawell, J., Waste, J., Lawlor, Acting C. J., and Houser, J., *pro tem.*, concurred.

Rehearing denied.

All the Justices concurred.