[Civ. No. 2632.   Fourth Appellate District.—March 21, 1941.]

EMYT L. LENTZ, Respondent, v. MARTHA M. HARTMAN et al., Appellants.

Donald Kolts and Wm. J. Clark for Appellants.

John M. Dvorin for Respondent.

CONWAY, J., *pro tem.*—This is an appeal from a judgment decreeing cancellation of a written assignment of a promissory note and mortgage on real property and fore-

closing said mortgage in favor of plaintiff and against defendants.

The action was tried by the court without a jury. The third count in the complaint sets forth a cause of action for declaratory relief and was dismissed at the time of trial.

The appellants prosecute this appeal upon the grounds of insufficiency of the evidence to support the findings of fraud by the trial court, and specify errors in procedure which they claim affected their substantial rights. The facts which find ample support in the evidence are as follows:

Emyt L. Lentz and Martha M. Hartman, for 16 years immediately prior to 1935, were on friendly terms, and for the last six years prior to 1935 they were on cordial terms and relations of intimate friendship and had contemplated marriage. Mrs. Hartman had marital differences with her husband, whom she feared might assert a lien against her property and she maintains that this fear on her part, alone, was the reason for her executing the notes and mortgages as hereinafter set forth. Respondent advanced various sums of money to Mrs. Hartman and made payments of certain obligations for her which totaled the sum of $1500, and in 1933, she executed and delivered to him a promissory note in the sum of $1500, secured by a mortgage on real property, which mortgage was never recorded. The reason given for the nonrecordation of the mortgage was the desire on the part of Mrs. Hartman to renew a first mortgage on her property which was about to become due and that she desired to conceal the existence of the $1500 mortgage given to respondent from the owner of the first mortgage. Respondent continued making monetary advances to and for the benefit of Mrs. Hartman and on September 10, 1935, the $1500 note and mortgage was cancelled and she executed and delivered to him a new note and mortgage in the sum of $3,000 secured by a mortgage on the same real property. This latter mortgage was recorded April 8, 1936, in the official records of Los Angeles County.

On July 20, 1936, respondent, who was the owner of different business enterprises, was en route to Burbank about 9:30 A. M. and called on Mrs. Hartman requesting her to accompany him on the trip. While in her home she asked him to execute a release of the latter note and mortgage, which release she had evidently theretofore caused to be pre-

pared, and promised in lieu thereof to give him a mortgage on five crypts which she then owned in the Glendale cemetery. Respondent was familiar with the cemetery property and was absolutely satisfied with the new security. Mrs. Hartman handed him a form of assignment of the $3,000 note and mortgage which was made out to William A. Cope who was a brother of Mrs. Hartman. While in Mrs. Hartman's home, one A. H. Buie was ''on the telephone line'' and she requested respondent to talk to him. Respondent had never known Buie but held a conversation with him over the telephone and Buie asked him if he ''knew what he was doing'' in executing the release of the note and mortgage. It appears that Buie acknowledged respondent's signature on the assignment before it was actually signed. However, respondent signed the assignment and delivered it to Mrs. Hartman, relying, he claimed, solely upon her promise to give him in lieu thereof another mortgage on the cemetery property. Within a short time thereafter he called on her requesting the execution of the note and mortgage on the cemetery crypts and she put him off by saying, ''Pretty soon''. The record shows that respondent repeatedly requested her to execute this new note and mortgage and that she repeatedly made excuses of family troubles, which she claimed pressed her, but she continually promised to execute the note and mortgage. He called upon her fifteen or twenty times in a fruitless effort to persuade her to give him the new security, and finally he sent one Grace Brouwer to see her with reference to the matter, and Mrs. Hartman told Grace Brouwer that now that she had the other note and mortgage back Lentz ''could whistle for it''. She never delivered the new note and mortgage, and, according to her testimony, denied she ever promised a new note or mortgage.

The transcript of the evidence shows cash advancements by respondent which totaled the principal sum of $3,000, although Mrs. Hartman denied that she owed any sum at any time to respondent. One Roy C. Keiser, attorney at law, testified he prepared the note and mortgage in his office, and that Mrs. Hartman stated to him at that time that she desired to raise the loan to $3,000, and that she also told him respondent had ''loaned her money''. The witness further testified that at the time of the execution of the mortgage in his presence respondent paid to Mrs. Hartman considerable

money, the exact amount being unknown to him, but there was "quite a bundle of bills".

The foregoing skeletonized summary of facts is supported by ample evidence and the trial court, before whom the witnesses testified, and who had an opportunity to observe their demeanor, made findings of fact substantially in accordance with the foregoing statement of facts.

■ Appellants contend that the finding of the trial court that consideration was paid for the note and mortgage was contrary to the evidence. There is a direct conflict in the testimony given by Mrs. Hartman and that of respondent and we find many corroborating circumstances and testimony of various witnesses which corroborate respondent's position. In this connection it may be pointed out that appellants have not attacked the testimony of corroborating witnesses in any respect and the findings, therefore, are not predicated upon the unsupported testimony of respondent but find ample corroboration from independent witnesses. Under the rule which has always prevailed in appellate courts every substantial conflict in the testimony must be resolved in favor of supporting the findings of the trial court. In the case of *Patten & Davies Lumber Co.* v. *McConville,* 219 Cal. 161, at page 164 [25 Pac. (2d) 429], our Supreme Court states the rule as follows:

"The findings of the court having been in favor of the plaintiff, the evidence must be construed most strongly against the appellant and in favor of the respondent. All evidence tending to establish the correctness of the findings as made must be accepted as true and the prevailing party must be given the benefit of all inferences which might reasonably have been drawn by the trial court. Every substantial conflict in the evidence must, under the rule which has always prevailed in this court, be resolved in favor of the finding. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 Pac. 1157].)"

Appellants recognize this rule but claim that the instant case falls within the rule announced in cases like *People* v. *Benson,* 6 Cal. 221 [65 Am. Dec. 506], and *Lind* v. *Closs,* 88 Cal. 6 [25 Pac. 972], where the testimony was so inherently improbable that it was utterly inconsistent with known facts. However, we have carefully reviewed the entire transcript and find nothing which would indicate that the rule an-

nounced in these cases would apply to the facts of the instant case. The record indicates that the trial court asked many questions of witnesses during the trial and we are satisfied that his findings were completely in harmony with the evidence.

Appellants contend that the evidence is insufficient to support the finding of the trial court to the effect that respondent believed and relied upon the statements and promises made by Mrs. Hartman at the time of the execution of the assignment of the note and mortgage to the effect that she would concurrently execute a new note and mortgage upon the cemetery property. The question of reliance upon fraudulent promises and representations depends largely here upon the fiduciary relationship of the parties. The evidence discloses the closest friendship between them for six years immediately prior to the execution of the note and mortgage, and apparently the question of marriage was discussed between them. At one time she carried sums amounting to $2,000, belonging to respondent, upon her person; that the confidence reposed in each other was mutual may be inferred from Mrs. Hartman's testimony with reference to the giving of the note and mortgage which may be found on page 117 of the transcript, as follows: "Q. That is why you made it out to Mr. Lentz? A. Yes. Q. You trusted him? A. I trusted him at the time. Q. Implicitly? A. Yes, I trusted him. Q. You had faith in his integrity that he would carry out your object, is that correct? A. Yes."

It is true that she contends she gave the note and mortgage to respondent in order to defeat any claim her husband might assert against her, but it was within the province of the trial court to disbelieve her contention in this respect and adopt the view supporting the business transactions between the parties as *bona fide*. In discussing the question of confidential relationship and the power of the trial court to draw inferences from proven circumstances, this court in the case of *Mathewson* v. *Naylor*, 18 Cal. App. (2d) 741, at page 744 [64 Pac. (2d) 979], says:

"While the general rule is that deceptions as to matters of law do not amount to fraud, the exception is recognized that they may, where the parties occupy confidential relations. (*Bank of America* v. *Sanchez*, (1934) 3 Cal. App. (2d) 238, 242 [38 Pac. (2d) 787], and cases cited.) A renewed un-

derstanding that they were to marry each other was reached by the parties to this action at the time the $3,000.00 loan was made. From this fact no indisputable presumption arises, it is true, but an inference might reasonably have been drawn that the plaintiff and the defendant bore a confidential relation one to the other. (*Kelly* v. *McCarthy,* (1936) 6 Cal. (2d) 347 [57 Pac. (2d) 118].) It was not essential to her case that the plaintiff should testify in so many words: 'I relied upon his promises and statements.' Where, as in this case, the evidence justifies it, an inference of reliance may be drawn from the circumstances which are shown. (*Hunter* v. *McKenzie,* (1925) 197 Cal. 176, 185 [239 Pac. 1090].)''

Circumstances may and often have a more persuasive effect upon the trial judge than the declaration of an interested party litigant that he did or did not rely upon representations or promises. Again in the case of *Hunter* v. *McKenzie,* 197 Cal. 176, at page 185 [239 Pac. 1090], we find this language:

''Of course it is incumbent upon the party seeking to recover in an action for deceit, founded upon false representations, to show that he relied upon and was influenced by them. True, there is no direct evidence showing that Mrs. Hunter relied and acted upon the alleged and found false representations, still it was not essential to a cause of action in her behalf to produce direct evidence that she relied upon such false representations. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.''

The District Court of Appeal in *Troy etc. Co.* v. *Drivers' etc. Co.,* 14 Cal. App. 152 [111 Pac. 121], (hearing in Supreme Court denied) quotes with approval, on page 155, from Clark on Contracts, as follows:

''A false representation, to constitute fraud, must actually deceive; that is, it must be relied upon by the other party and must induce him to act to his prejudice. If it is not believed, or the party disregards it and makes inquiries for himself, there is no fraud. . . . If the representation was one calculated to induce the other party to make the contract, the presumption is that he was influenced by it; and

in order to take away his right to relief on the ground of fraud it must be shown that he did not rely upon it.''

We feel there was satisfactory evidence to show that respondent relied upon the promises of Mrs. Hartman and was actually deceived by them, and that the evidence was amply sufficient to support the trial court's conclusion in this respect.

Appellants' reply brief was filed July 11, 1939. On February 9, 1940, they filed a supplemental brief herein prepared by counsel who did not participate in the trial of the action. This supplemental brief questions the sufficiency of the complaint to state a cause of action.

The complaint alleges that defendant Hartman stated to plaintiff that she was the owner of the cemetery property, and, in order to assist her in the maintenance of the property herein involved, she desired to substitute the note and mortgage by giving a new note and mortgage on the cemetery property. Paragraph VI of the complaint alleges that respondent believed and relied upon such representation and promise and that in reliance upon the same executed the assignment. Paragraph VII of the complaint alleges that such promises and representations on her part were made for the purpose and with the intent of procuring the assignment without paying the consideration therefor and without any intent on her part to carry out the same. It also alleges that she did not intend to make or execute any new note or mortgage. Paragraph IX alleges reliance on her statements, and that the assignment was executed and delivered in complete reliance upon these representations. Perhaps the complaint could have been more carefully prepared but we believe it contains all of the necessary allegations to show fraud, and, considered in its entirety, it alleges sufficient grounds for cancellation for fraud. Also, the transcript testimony shows that the evidence was admitted without objection in all material respects.

In appellants' supplemental brief, under the caption of ''questions involved'', appellants state:

''The testimony of the plaintiff is so inherently improbable and so utterly inconsistent with known facts and its falsity is so apparent that it is not conceivable that a *mind uninfluenced by some hidden prejudice* could place reliance upon it: and the judgment must be attributed to *something other* than the

calm and unbiased consideration of the evidence which is the right of every litigant and without which a trial is mockery and the hope of justice a delusion.'' (Italics ours.)

In respect to this very drastic and unwarranted pronouncement, the record discloses that the case was fairly presented upon its merits and there is not the slightest evidence in the record that the trial court was prejudiced or biased in any respect.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.