[Civ. No. 813. Fourth Appellate District.—June 9, 1933.]

CRESPI & COMPANY (a Corporation), Respondent, v. L. F. GIFFEN, Appellant.

Irvine P. Aten for Appellant.

G. L. Aynesworth for Respondent.

CAMPBELL, J., *pro tem.*—This action was begun by plaintiff, a Texas corporation, against Giffen-Troutt Company, a copartnership comprised of L. F. Giffen and W. L. Troutt, and L. F. Giffen and W. L. Troutt, individually. Service was had on the copartnership and L. F. Giffen, but W. L. Troutt was not served. Judgment was rendered against the copartnership and defendant, L. F. Giffen. From this judgment Giffen has appealed. The action is upon a promissory note which was executed by the defendants in favor of plaintiff for the sum of $12,500. Appellant pleaded his discharge in bankruptcy, but respondent claims the money was obtained by the defendant copartnership, by means of misrepresentation and fraud of appellant's partner and that such misrepresentation and fraud prevented his discharge in bankruptcy on this debt.

The points urged by appellant are: (1) that respondent was a foreign corporation doing business within this state without having complied with the statute relative to foreign corporations; (2) that appellant was discharged in bankruptcy from this debt; and (3) that the alleged misrepresentation and fraud are not within the exception of discharges of debtors in bankruptcy.

The facts may be summarized briefly as follows: Respondent, at all times during the negotiations for the loan, was a Texas corporation with its principal place of business at

Waco, Texas. Defendants were residents of Fresno, California. The defendants, through W. L. Troutt, one of the partners, telephoned to respondent, stating that the defendants had a contract with one Anderson of Tulare County, California, for the purchase of 700 bales of cotton for the year 1926, which purchase required that $12,500 be advanced to Anderson as required by him during the farming season of 1926, to enable Anderson to properly farm, harvest and deliver the 700 bales of cotton to be sold. Respondent agreed to purchase such cotton, and to advance on account of the purchase price, $12,500 to be disbursed during the season by Giffen-Troutt Company to Anderson in accordance with his needs. The moneys were to be repaid to respondent by way of deduction from the purchase price of cotton as the same was delivered after arrival, and as further security for the repayment of the advancement, respondent required Giffen-Troutt Company to assign to respondent the contract which it had with Anderson, and also Anderson's note and crop mortgage for $12,500 in addition to the execution and delivery of the note of Giffen-Troutt Company for a like amount to respondent, and to deliver to respondent a cotton-sales contract for 700 bales of cotton. This was done and the various papers were executed and assignments made. The instruments were deposited in the First National Bank of Fresno, California, by defendants and transmitted to respondent. Respondent then wired to said bank from Waco, Texas, $12,500, less indebtedness due the respondent from the defendants amounting to $2,900 (which was deducted at the request of defendants). The money was to be credited to the account of defendants on delivery of the instruments referred to. On receipt of the money, the bank credited the money to the account of defendant Giffen-Troutt Company, and transmitted the various instruments to the respondent at Waco, Texas. In the course of the negotiations over the telephone and by telegraph, defendant W. L. Troutt, representing the defendants, had informed and agreed with respondent, that the money to be forwarded should be used solely for the purpose of financing the farming operations of Anderson's cotton crop in Tulare County; that the money was not to be used in defendants' business and was not a personal loan to the defendants. They disregarded this agreement and understanding and

within three days after the funds were deposited, defendants withdrew all these funds from the bank and used them to pay the indebtedness of Giffen-Troutt Company. Not one cent of this money was used for the purpose of financing Anderson's farming operations. The evidence shows that the respondent had previously had cotton contracts with defendants and that shipments of cotton were evidenced by bills of lading, offered in evidence by respondent, showing shipments from California points to Galveston, Texas.

Relative to the interstate character of the transactions, the trial court made the following findings: " . . . that at the time of the transaction herein involved, the plaintiff was engaged solely and only in interstate and not in intrastate commerce. . . .

" . . . which seven hundred bales of cotton the said Anderson had agreed and promised to sell to plaintiff, which said agreement had been made by plaintiff through its agent, L. F. Giffen, said cotton to be delivered by said Anderson free on board cars, at California shipping points, to be shipped to plaintiff in Texas; . . .

" . . . that plaintiff was not, at any time in the year 1926, engaged in intra-state business in California, and was not doing business in California, and was not required to file with the Secretary of State copies of its Articles of Incorporation; . . . "

There is ample evidence to support the court's findings upon the subject.

In the case of *H. K. Mulford Co.* v. *Curry*, 163 Cal. 276, 282 [125 Pac. 236, 238], the Supreme Court said: "The admitted power of a state to regulate and prescribe terms upon which a foreign corporation may engage in *intra*-state or domestic business, is subject to this limitation, that where such foreign corporation is engaged in *inter*-state as well as *intra*-state business, no such term, condition or requirement will be constitutional if it imposes any burden upon the inter-state business of such corporation, whatever be its name or form; . . . "

Appellant contends that section 1 of the Act of 1915 (Stats. 1915, p. 422) specifying the conditions upon which a corporation may transact business in this state, as amended in 1923 (Stats. 1923, p. 1034), applies to this case. This act provides that any foreign corporation engaged in intra-

state business must, as a condition precedent to doing business in this state, file with the Secretary of State certain designated papers, pay a filing fee, and appoint a process agent, and that failure to comply with these conditions renders the foreign corporation subject to certain penalties.

Appellant cites numerous cases which he claims supports his position but in examining them we find for the most part that the cases relate to intrastate business.

■ This action is based upon a promissory note executed by the defendants. Appellant Giffen pleaded a discharge in bankruptcy releasing him from his obligation on the debt. The court made a finding as follows: "That at the time of said statement, representation and promise made for, on behalf of and by the defendants, defendants did not intend to hold, pay out or apply said money to the credit or for the use and benefit of said Anderson, but on the contrary intended to and did immediately pay out and use said money so deposited in paying creditors of defendants; that within three days after said funds were so deposited by plaintiff, the same had all been used by defendants for paying their debts, and none thereof was ever delivered over or paid to said Anderson; that defendant Giffen did not know of the statements, representations and promises made by defendant Troutt."

Appellant contends that the proof of misrepresentation and fraud was admitted in evidence over his objection, when it had not been pleaded. In the instant case the original obligation is on a promissory note. Fraud was included in and incidental to the creation of that obligation. That incident was properly urged without pleading, to avoid the plea of discharge in bankruptcy. Section 462 of the Code of Civil Procedure provides: "Every material allegation of the complaint, not controverted by the answer, must, for the purpose of the action, be taken as true; the statement of any new matter in the answer in avoidance or constituting a defense or counterclaim, must, on the trial, be deemed controverted by the opposite party."

This is a sufficient answer to appellant's contention.

■ Appellant next contends that the discharge in bankruptcy was a complete defense. Subdivision 2 of section 17 of the Bankruptcy Act (sec. 35, title 11, U. S. C. A.), provides that a discharge in bankruptcy shall release a bank-

rupt from all his provable debts except such as are liabilities for obtaining property by false pretenses or false representations. It is claimed the defendants obtained the money by false representations. The court found that the defendants promised and represented that "they would hold said money as agents of plaintiff and pay the same to said Anderson from time to time during the year 1926, in accordance with the needs of his farming operations; that plaintiff believed and relied upon said statements, representations and promises; that because of said representations and promises, the plaintiff, on the 18th day of January, 1926, forwarded said money by telegraph to the First National Bank in Fresno to be deposited to the credit of defendants, and the same was on said day deposited to the credit of said defendants; . . . '' The evidence shows that the defendants obtained the money from the respondent by false statements and representations that the funds would be used and applied in advances to Anderson during the farming season of 1926, and is sufficient to support the finding. Misrepresentation and fraud being excepted from the discharge of a debtor in bankruptcy when proven, and a partner being responsible for the acts of another partner, if done within the scope of the partnership business, a discharge in bankruptcy will not release the innocent partner in such a case as this, especially where the fruits of the wrong were received and used by and for the benefit of the partnership. (*Strang* v. *Bradner*, 114 U. S. 555 [5 Sup. Ct. 1038, 29 L. Ed. 248].)

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1933.