[Civ. No. 11099. Second Appellate District, Division One.—January 28, 1937.]

RUTH MATHEWSON, Appellant, v. EDWARD HARRISON NAYLOR, etc., Respondent.

John A. Jorgenson and Don R. Holt for Appellant.

Wallace & Crandall for Respondent.

BISHOP, J., *pro tem.*— Measured by the familiar rules applicable to motions for nonsuit (see 9 Cal. Jur. 557 et seq.), the evidence in this case would have supported a finding in favor of plaintiff's contention that she had been induced by defendant's fraudulent representations to loan him considerable sums of money, and that her action was barred neither by the statute of limitations nor by the dis-

charge of the defendant in bankruptcy. The judgment of nonsuit appealed from must, therefore, be reversed.

While the theory upon which plaintiff's complaint was constructed was that a fraud had been perpetrated upon her, even without the allegations of fraud, the complaint states facts sufficient to constitute a cause of action on a promissory note, and it is very clear that on this theory a case warranting judgment in the plaintiff's favor was made out. The defendant, admittedly, had borrowed considerable sums from the plaintiff over a period of months, and had not repaid them, except in small part. Notes, providing for instalment payments, were given to evidence the indebtedness, and some of the instalments were overdue when the action was commenced. Were these all the facts, plaintiff plainly would be entitled to a judgment, not for the full amount prayed for in the complaint, but at least for what was due on the notes. At the time the motion for a nonsuit was made, the facts established by the pleadings and proof were those outlined above, and the trial court would have acted properly had he denied the motion.

However, a discussion between the trial judge and counsel followed the motion for a nonsuit, in which it was suggested that reliance be placed on the defense of bankruptcy rather than on the motion. The plaintiff had alleged in her complaint that the defendant, some time after the dealings between them, had filed a voluntary petition in bankruptcy. This, in his answer, the defendant admitted, adding that the bankruptcy proceedings had proceeded to the point where he had been adjudicated a bankrupt. As a special defense he again alleged that he had filed a voluntary petition in bankruptcy, that the claim on which this case is based had been scheduled, and that the plaintiff had had actual notice of it all. There was no allegation in the pleadings nor claim at the trial that an order discharging the defendant had been made. Indeed, following the suggestion that reliance be placed on the defense, "namely, the scheduling of the debt and discharging of bankruptcy", no evidence in its support was introduced. The defendant's counsel's reply to the suggestion was the mistaken one that "that is admitted by the pleadings". Later he stated that "the matter is still pending. Everything has been done up to the discharging that will take place in the District Court of the United

States on May 4, 1936.'' This status of affairs was conceded by the plaintiff's counsel, his concluding statement being: ''I will concede that he is going to be discharged from it (the debt to plaintiff) so far as the bankruptcy law can do so.'' Whereupon the trial court ruled: ''All right, motion granted.''

If the remarks of counsel constituted a stipulation as to facts, it was that at the time of trial everything was in readiness for an order discharging the defendant in bankruptcy, and that so far as could be seen the order would be made some two weeks later. There was neither pleading, proof nor stipulation that he had been discharged, only concession that he would be. The right of plaintiff to a judgment had not yet been foreclosed.

Should we regard the remarks of plaintiff's counsel, however, not as a stipulation of facts, but as having the effect of establishing, by estoppel or otherwise, that the incomplete bankruptcy proceedings had the potency of a completed adjudication of discharge, even so the motion for a nonsuit should not have been granted, for it appears, sufficiently to defeat such a motion, that plaintiff's claim was born in defendant's fraud and, hence, is immune to bankruptcy proceedings. (See cases cited at conclusion of this opinion.) Exercising the credulity required in testing the evidence on a motion for a nonsuit, we find that the plaintiff would not loan the defendant the last large sum he secured, $3,000, ''until he promised he would secure me in every possible way. . . . He said he would give me a chattel mortgage on the store, the fixtures, the stock and all the assets of the store. . . . He told me a chattel mortgage was just as good as a mortgage on a piece of real estate, and when I had a chattel mortgage I was practically the owner of the store he was running. . . . He said he knew as much about the law as any attorney did. . . . I know that I trusted Ed and I trusted him implicitly.'' A chattel mortgage in words covering, among other things, ''all stock of merchandise now in or about the premises, and all personal property of every nature and description owned by the undersigned that is now, or during the term of the note secured by this Chattel Mortgage shall be, on any part of the above described premises'', was given, it is true. However, because the stock in trade of a merchant may not be mortgaged (sec. 2955, Civ.

Code), the instrument did not afford the plaintiff the protection of a mortgage lien on the defendant's stock of merchandise, amounting at one time to $4,000, when the creditors of the defendant acquired his assets. In the colloquy between court and counsel following defendant's objection to the question put to the plaintiff, "Did you ever find out whether these chattel mortgages were any good?" it seems to have been conceded that, except as to fixtures of small value, the creditors of the defendant prevailed over the plaintiff, due to the ineffectiveness of the chattel mortgage. By his answer the defendant admitted that he had made an assignment for the benefit of his creditors.

While the general rule is that deceptions as to matters of law do not amount to fraud, the exception is recognized that they may, where the parties occupy confidential relations. (*Bank of America* v. *Sanchez*, (1934) 3 Cal. App. (2d) 238, 242 [38 Pac. (2d) 787], and cases cited.) A renewed understanding that they were to marry each other was reached by the parties to this action at the time the $3,000 loan was made. From this fact no indisputable presumption arises, it is true, but an inference might reasonably have been drawn that the plaintiff and the defendant bore a confidential relation one to the other. (*Kelly* v. *McCarthy*, (1936) 6 Cal. (2d) 347, 57 Pac. (2d) 118.) It was not essential to her case that the plaintiff should testify in so many words: "I relied upon his promises and statements." Where, as in this case, the evidence justifies it, an inference of reliance may be drawn from the circumstances which are shown. (*Hunter* v. *McKenzie*, (1925) 197 Cal. 176, 185 [239 Pac. 1090].)

There was, therefore, evidence sufficient to have supported a finding that the defendant had obtained the money of the plaintiff by false representations. ■ Even if the notes given thereafter may be said to have waived the fraud and substituted a contractual obligation in its place, nevertheless, inasmuch as the notes represented a liability which had its inception in the securing of money by the making of false representations, the action on the note would not be barred by a discharge in bankruptcy. (*Donahue* v. *Conley*, (1927) 85 Cal. App. 15 [258 Pac. 985]; *Crespi & Co.* v. *Giffen*, (1933) 132 Cal. App. 526 [23 Pac. (2d) 47]; *Gregory* v. *Williams*, (1920) 106 Kan. 819 [189 Pac. 932]; *Symmes* v.

*Rollins,* (1928) 39 Ga. App. 53 [146 S. E. 42]; *Blumberg* v. *Louis Henne Co.,* (Tex. Civ. App. 1928) 5 S. W. (2d) 1015; *Guernsey-Newton Co.* v. *Napier,* (1929) 151 Wash. 318 [275 Pac. 724].) As to the note, the statute of limitations was not pleaded; it had not run.

The judgment of nonsuit is reversed.

Doran, J., concurred.

Houser, P. J., dissented.