[Civ. No. 21485. Second Dist., Div. Two. July 17, 1956.]

JAMES TERRY, Appellant v. JOHN F. BENDER, Respondent.

Albert Vieri for Appellant.

Robert E. Rosskopf for Respondent.

FOX, J.—Plaintiff brought an action as a taxpayer for an injunction under section 526a, Code of Civil Procedure, to enjoin the payment of a warrant in the sum of $15,095.74. Such payment had been authorized by the City Council of Compton, California. The payee of the warrant was John F. Bender, employed as a special attorney by the city of Compton. The defendants named, in addition to Bender, are Frank G. Bussing, mayor of Compton, and Gerald L. Chapman, city treasurer.

The appeal is from a judgment of dismissal entered after the court sustained demurrers to the third amended complaint. Leave to amend the first count was granted, but plaintiff declined to do so. Demurrers to the remaining three counts were sustained without leave to amend.

The clerk's transcript contains both the original complaint and the third amended complaint for an injunction. The original complaint has been made a part of the record because Bender, the respondent herein, makes reference thereto in certain specifications of his special demurrer and contends that in determining the sufficiency of the third amended complaint we should examine the allegations in the original pleading. The third amended complaint will be subsequently designated as the complaint and the initial pleading will be referred to as the original complaint.

It should be emphasized at the outset that this court is confronted with questions of law only and must accept the allegations of the complaint as true for the purposes of this appeal.

## COUNT ONE

The first cause of action is predicated on a financial transaction between Bender and Bussing which is denominated a bribe and charges that Bussing was induced to use his influence in procuring approval of the warrant in favor of Bender at a secret meeting of the city council because of Bussing's unlawful interest in the warrant. The following facts are alleged:

(a) Plaintiff is a citizen, resident and taxpayer of the city of Compton, California, which is a chartered municipal corporation, and brings the suit in his representative capacity as a taxpayer. Bussing is mayor of Compton and a member of its city council, having been elected for a four-year term of office in July, 1953, and Chapman is city treasurer.

(b) Defendant John F. Bender has been and is employed as special attorney for the city pursuant to a written contract executed on January 11, 1944, a copy of which is attached. This agreement recites that Bender's employment by the city was for the purpose of restoring to the tax rolls all tax-deeded parcels in the city and liquidating all special assessment delinquencies on all properties within the city. To accomplish these purposes, the agreement enumerates Bender's duties, in part, as follows:

(1) Obtaining tax analysis reports on all parcels of tax-deeded or special assessment delinquent property, and furnishing reports to the council in respect thereto.

(2) To appear before any court, board or tribunal in respect to the acquisition by the city of said tax deeds, the clearing of the titles to any of the tax-deeded properties acquired by the city, or the disposal of any such properties.

(3) To perform all legal services required to endeavor to vest merchantable title in such tax-deeded properties in the city.

(4) To handle all escrows or other matters in respect to the resale of said properties.

Bender's compensation was fixed at 25 per cent of the gross amount received on settlements of special assessments and 25 per cent of the gross sales of tax-deeded property sold by the city. The contract was terminable on 90 days' written notice.

(c) On or about October 13, 1953, the city attorney offered to render to the city as a part of the general services of the city attorney, the services which Bender was performing under his contract.

(d) Sometime between October 13, 1953, and November 17,

1953, in order to prevent the city from cancelling or terminating the contract and to obtain the payment of fees thereunder, Bender gave Bussing $500 in cash, as well as the sum of $6,550 for the purchase of real property. These payments were made with the intent to influence Bussing's vote as mayor and councilman, the parties orally agreeing: (1) that Bussing would have the free use of the property and collect rents therefrom for his own benefit as long as he was able to prevent termination of the contract; and (2) that Bender would finance further improvements on the property and assist Bussing in the real estate business if Bender was successful in retaining his contract with the city and in keeping certain properties which he purchased from the city in the names of Alzola and Webster.

(e) Bussing solicited and received the payments last described from Bender at a time when he was in financial distress, and with the corrupt intent of allowing his vote to be influenced to obtain approval of the warrant of $15,095.74 for Bender. Thereafter, Bussing purchased the real property with Bender's funds and obtained and kept $800 in rents from said property without paying Bender for the use of the property or making any other payments to him. In addition, Bender paid the 1954 taxes due on the property.

(f) In exchange for the money received and in consideration of the promises made, Bussing voted on November 17, 1953, to reject the offer of the city attorney to take over Bender's work and to instruct the city attorney to refrain from filing any civil action against Bender on behalf of the city by reason of certain wrongdoing of Bender. On March 9, 1954, the city council held a hearing on charges made by the city attorney against Bender, whereupon Bussing, pursuant to the corrupt understanding voted to instruct the city attorney that the city council did not wish to take any action against Bender.

(g) In December, 1954, and January, 1955, the city council held secret meetings at which Bussing induced the members to approve a warrant in the sum of $15,095.74 to Bender for services under his contract rendered during the period January 11, 1944, to June 21, 1954. On January 4, 1955, the stage having been set by Bussing's influence on the city council at its secret meetings pursuant to his corrupt agreement with Bender, the city council held its regular meeting at which time Bussing stated he favored approval of the warrant. The city council thereupon voted to approve the warrant. Because

of the bribery of Bussing and his acquisition of an unlawful interest in the payment of the warrant to Bender, the resolution approving the warrant is void and the city treasurer has no authority to disburse funds pursuant thereto.

(h) The city charter of Compton contains certain provisions prohibiting officials and employees of the city from having an interest in certain contracts and transactions involving the city, which are set forth *in haec verba.**

(i) By reason of his corrupt agreement with and his receipt of money from Bender, Bussing has acquired a personal interest in the retention of Bender's contract with the city and in the payment of the warrant which is in conflict with the faithful discharge of his duty as mayor. The greater the payments to Bender and the longer Bender retains his contract, the greater will be Bender's ability to carry out his promise of economic reward to Bussing pursuant to their agreement. The payment of bribes to Bussing is an illegal payment under section 526a of the Code of Civil Procedure and contrary to public policy.

(j) Unless Chapman is restrained from signing and paying the warrant and Bussing is restrained from participating in deliberations, discussions and votes of the city council relating to Bender, the city will suffer irreparable damage.

As has been previously stated, Bender's general demurrer to the first cause of action was overruled, and his special demurrer sustained with leave to amend. Following plaintiff's

---

*From 1925 until March 11, 1948, section 6, article 26, of the city charter provided: "No member of the Council, or of any Board, and no officer or employee of the City shall be or become directly or indirectly interested in any contract, work or business, or in the sale of any article, the expense price or consideration of which is payable from the City Treasury, nor shall either or any of them receive any gratuity or advantage from any contractor or person furnishing labor or material for the same, and any contract with the City, in which any such officer or employee is or becomes interested, shall be declared void by the Council." (Stats. 1925, ch. 20, pp. 1212, 1245.)

Since March 11, 1948, section 1202, article 12, of the charter provides: "No member of the City Council, officer or employee of the City, shall be financially interested, directly or indirectly, in any contract, sale or transaction to which the City is a party . . . Any such contract or transaction in which there shall be such an interest shall become void at the election of the City, when so declared by resolution of the City Council . . . If any member of the City Council, officer or employee of the City . . . shall so vote or participate or be financially interested as aforesaid, upon conviction thereof, he shall forfeit his office." (Stats. 1948, ch. 11, pp. 236, 259.)

Section 601, article 6, of the 1948 charter reads: "It shall be the duty of the City Council to enforce the provisions of the Charter." (Stats. 1948, ch. 11, pp. 236, 242.)

election to stand upon his pleading, the court dismissed the complaint. A review of the propriety of this action requires a statement of the several grounds of special demurrer.

There are eight specifications in the special demurrer based on the grounds of ambiguity, uncertainty and unintelligibility of the first cause of action. In the first two specifications, reference is made to the original complaint in which it is asserted the entire transaction between Bussing and Bender was alleged to be in writing, whereas the amended complaint alleges an oral agreement. In this connection, Bender's brief makes much of the fact that the original complaint alleges Bussing executed a note secured by a trust deed on the property he acquired through Bender and gave an assignment of rents as further security. The trust deed, in which one Danciu, Bender's nominee and agent, is named as beneficiary, was attached as an exhibit. The amended complaints omit these matters, and contain a slightly different version of the transaction by which property passed to Bussing. Bender purports to regard this as fatally inconsistent and ambiguous. His argument is founded on an entirely untenable premise.

The general rule is that an amended pleading supersedes the original complaint, which thereafter serves no function as a pleading. (*Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 384 [276 P.2d 257]; *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 284 [295 P.2d 113].) An exception is recognized where there are allegations in the prior complaint destructive of the cause of action which are omitted in the subsequent pleading without a valid explanation. (*Owens* v. *Traverso*, 125 Cal.App.2d 803, 808 [271 P.2d 164].) This is not such a case. All that was omitted were certain evidentiary facts relating to the technique of consummating the Bender-Bussing transaction, which were not essential to the allegation of a cause of action; and all that was varied were unsubstantial details which in no way changed the fundamental character of that transaction. Under such circumstances, Bender's challenge to the sufficiency of the amended complaint must be determined without reference to the superseded pleading.

Specifications 3 through 5, and other elements of specifications 1 and 2, all of which purport to attack the pleading on the ground of ambiguity, uncertainty and unintelligibility, seem to be concerned less with these features than with the sufficiency of the facts to state a cause of action. But viewed from either aspect, they are not well taken. In essence, it is claimed that the facts alleged do not constitute any defense

to the payment of the warrant nor do they show any prohibited interest by Bussing in Bender's contract; that it not appearing that Bender did not earn his compensation, Bussing's vote to approve the warrant is immaterial; and that it does not appear that Bussing's participation or vote affected or influenced the approval of the warrant or that the transaction between Bender and Bussing is of any materiality so far as Bender's right to payment of the warrant is concerned. Since these specifications pertain to matters fundamental both to this count as well as others which may be subsequently discussed, it may be profitable to explore the controlling principles at this point.

These principles have been instructively set forth in the ably-considered opinion of Mr. Justice Vallée in *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278 [295 P.2d 113] (hear. den.), which may well be viewed as a companion case. There, as here, Bender is the chief protagonist, and his questioned activities during his tenure as special city attorney are the focal point of the litigation. We epitomize and distill what is there stated, so far as it is here germane and without immediate reference to the numerous authorities cited therein (pp. 288-291): █ A public office is a public trust created in the interest and for the benefit of the people. █ Public officers are obligated, *virtute officii*, to discharge their responsibilities with integrity and fidelity. █ Since the officers of a governmental body are trustees of the public weal, they may not exploit or prostitute their official position for their private benefits. When public officials are influenced in the performance of their public duties by base and improper considerations of personal advantage, they violate their oath of office and vitiate the trust reposed in them, and the public is injured by being deprived of their loyal and honest services. █ It is therefore the general policy of this state that public officers shall not have a personal interest in any contract made in their official capacity. The charter provisions of the city of Compton are in harmony with the established policy of the state in this regard by prohibiting a city officer from being financially interested in any contract or transaction to which the city is a party. █ A transaction in which the prohibited interest of a public officer appears is held void both as repugnant to the public policy expressed in the statutes and because the interest of the officer interferes with the unfettered discharge of his duty to the public. █ The public officer's interest need not be a direct one, since the

purpose of the statutes is also to remove all indirect influence of an interested officer as well as to discourage deliberate dishonesty. Statutes prohibiting such ''conflict of interest'' by a public officer are strictly enforced. These propositions are supported by a plethora of authority, most notably Government Code, sections 1090-1092; *Moody* v. *Shuffleton*, 203 Cal. 100, 105 [262 P. 1095]; *Miller* v. *City of Martinez*, 28 Cal. App.2d 364, 370 [82 P.2d 519]; *Stockton Plumbing & Supply Co.* v. *Wheeler*, 68 Cal.App. 592, 601-602 [229 P. 1020].

This court has had occasion to give expression and definition to similar pronouncements in two recent cases involving the unlawful interests of members of the Los Angeles Board of Education. In *People* v. *Darby*, 114 Cal.App.2d 412, 426 [250 P.2d 743], we pointed out that the conduct denounced by the law was ''the defendant's creation of a situation whereby he becomes interested in a public contract while he is a member of the board. The interest comes under the ban of section 1090 [of the Government Code] whether the member brings about the situation or continues to be interested after knowledge of its existence. For a school trustee to have an 'interest' he is not required to share directly in the profits to be realized. He has an interest the moment he places himself in a situation 'where his personal interest will conflict with the faithful performance of his duty as trustee.' [Citations.]'' In *People* v. *Elliott*, 115 Cal.App.2d 410, 418 [252 P.2d 661], it was observed that ''the unlawful interest of a public officer in a public contract which is prohibited, is a 'personal interest which might interfere with the unbiased discharge of his duty to the public or prevent the exercise of absolute loyalty and undivided allegiance to the best interests of the governmental unit which he represents.' [Citations.]''

Tested by these prevailing concepts of public morality, and accepting as true the allegations of the complaint, it is beyond question that at the time Bussing voted for approval of the warrant to Bender he had acquired such an interest in the latter's contract as restricted the free exercise of the discretion vested in him for the public good. He had placed himself in a position of economic servitude to Bender, his continued free use of the property passing to him from Bender and his appropriation of the rents therefrom being dependent on Bender's retention of his contract with the city. Bussing agreed to use his official position and influence in Bender's behalf in exchange for the monetary benefits flowing from Bender's largesse towards him. The fact that Bussing's

interest might be small or indirect is immaterial so long as it is such as deprives the city of his overriding fidelity to it and places him in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the public good. (*Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 289-290 [295 P.2d 113].) The interest revealed by the pleading was plainly a disqualifying one, for it was clearly to Bussing's pecuniary advantage to insure the perpetuation of Bender's contract. (*People* v. *Elliott, supra,* p. 419.) ■ As long as it continued, he was assured of the gratuitous use of, and income from property he had acquired through Bender. Such an interest by Bussing tainted Bender's contract with illegality and rendered payment for services performed thereunder, at least during the existence of such prohibited interest, contrary to public policy. (*Miller* v. *City of Martinez, supra; County of Shasta* v. *Moody,* 90 Cal.App. 519, 523 [265 P. 1032]; *Hobbs, Wall & Co.* v. *Moran,* 109 Cal.App. 316, 319-320 [293 P. 145].)

In disavowing the proposition that Bussing had a prohibited interest in the contract under consideration, Bender relies on *Commonwealth* v. *Strickler,* 259 Pa. 60 [102 A. 282]. A similar argument based on the Strickler decision was repelled in *People* v. *Darby, supra,* page 432, this court pointing out that the Pennsylvania decision is out of harmony with the California law.

Specifications 6 through 8 of the special demurrer attack the adequacy of plaintiff's allegations of irreparable damage as a basis for enjoining payment of the warrant. ■ Plaintiff is suing as a resident citizen and taxpayer of Compton and his complaint alleges facts which indicate that payment of the warrant as drawn will result in the unlawful disbursement of municipal funds. As such taxpayer, he has express statutory authorization to maintain an action to prevent the alleged illegal expenditure. (Code Civ. Proc., § 526a; *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271, 276 [253 P.2d 464]; *Wirin* v. *Horrall,* 85 Cal.App.2d 497, 504 [193 P.2d 470].) It may not be amiss to observe that the integrity of its officials is of vital concern to the public. A municipality whose funds are to be expended pursuant to a corrupt agreement to inject the personal influence of a public officer in the procurement of action by a governmental body would suffer incalculable harm to the vitality and efficiency of its public

service, and a taxpayer may sue to enjoin such an imposition on the public.

As far as concerns the claimed uncertainties in the first cause of action, they relate to matters which lie within the knowledge of defendant. Demurrer does not lie to such matters. (*Schaefer* v. *Berinstein, supra*, p. 298.)

### The Second Count

Count II generally alleges that during the period for which compensation for services was authorized under the warrant, Bender violated the city charter by purchasing property from the city through "dummies"; and that he had an interest adverse to the city in certain transactions wherein he represented private purchasers of land from the city and received fees upon such sales. It is particularly alleged:

1. Bender, as special attorney for the city of Compton in matters relating to the sale of its tax-deeded real property, was required by the city council to advise them on its sales and give his opinion (a) whether sales should be made by quitclaim deed only or by merchantable title, and whether such merchantable title should be obtained in quiet title proceedings or by purchasing outstanding clouds, and (b) whether the price for which properties sold by quitclaim deed was fair in view of the condition of its particular title. As to sales of property to be hereafter described, Bender advised the city council that it was to the city's best interest to sell by quitclaim deed only and that the price offered was fair and reasonable because of the condition of the title. In approving those sales, the city believed Bender's representations and relied on his judgment.

2. In 1945, unknown to the city, Bender purchased numerous lots from the city in the names of John M. Alzola and Grayce W. Webster for a total of $3,830 by representing that the price was fair because of the condition of the title. The fair and reasonable value of those properties was not less than four times the price paid. Bender knew when he made his representation to the city that the purchase price was not fair, and intended to purchase them for his own account, clear title, and realize a secret profit at the city's expense. The city relied on Bender's representations without knowing he was buying for his own account in making the sale and paid him $951 as attorney's fees and $169 as reimbursement of costs under his contract. The city's damage on these transactions was $11,320.

3. In 1947 and 1948, a corporation known as Elbert, Ltd., bought various parcels of property from the city for a total consideration of $17,340. Elbert claimed an interest as lienholder in those properties adverse to the city. In connection with those sales, Bender falsely represented to the city that he had knowledge that Elbert held valid liens on the properties which it could enforce against any purchaser from the city and that the sales price to them was a fair one. He therefore advised the city to sell to Elbert by quitclaim deed without attempting to clear its title to the properties. Relying on Bender's false representations, the city sold to Elbert at a price which was one-fifth of the true value of the property, suffering damage in the sum of $69,000. Bender was paid over $4,000 as attorney's fees under his contract with the city. Unknown to the city and without its consent, Bender also acted as attorney for Elbert in these transactions and received compensation for his services in an amount unknown to plaintiff.

4. Because of Bender's fraudulent concealment, Bender's dual representation of both the city and Elbert, Ltd. and his purchase of city property through dummies was not known to the city, which was unaware of any facts that might put it on notice of wrongdoing on the part of Bender. In March and April, 1953, the city acquired knowledge of these facts through statements made by a private citizen at a hearing held by the city council, and subsequently through statements to the city council by the city attorney of Compton.

5. On January 4, 1955, the city council approved payment of a warrant to Bender for services rendered under his contract between January 11, 1944, and June 21, 1954, despite knowledge of the violations by Bender of the city charter. By reason of Bender's violation of the charter and his breach of a fiduciary duty, Bender was not entitled to receive any compensation from the city and payment of the warrant is illegal.

As has been stated, the court below sustained a demurrer to this count without leave to amend. This was error.

The crucial allegations of the complaint are (1) that Bender made secret profits at the city's expense by purchasing, through dummies, city property at grossly undervalued prices because of his misrepresentations to the city council, and (2) that while special city attorney, he represented and received fees from a private client with an interest adverse to

the city, and by his misrepresentations to the city enabled that client to purchase city property at a fraction of its value. That Bender's action in purchasing property from the city in 1945 was a violation of section 6, article 26 of the city charter of Compton, as it then existed is established by the case of *Schaefer* v. *Berinstein, supra.* In rejecting Bender's argument that the charter provision covered only sales *to* the city and not a sale *by* the city, the court stated (p. 291): "The charter provision cannot be given such a narrow construction. The distinction is unsound since the evil is involved in both transactions." Continuing its discussion, the court pointed out that Bender's conduct was also prohibited by section 1090 of the Government Code and characterized his clandestine purchases as follows: "Bender was employed by the city of Compton as a special city attorney for the purpose of rehabilitating tax deeded and special assessment frozen properties situated within the city. He was an officer and agent of the city and as such was in a position to advise the city council as to what action should be taken relative to the property involved. He could not buy the property in his own name and he could not do so through a dummy. The contracts to purchase from the city and the ultimate sales were contrary to public policy and are void [citations]." According to the pleading, this violation of the statutes relating to "conflicts of interest" damaged the city in an amount over $11,000.00. Equally improper was Bender's activity in representing as an attorney a private purchaser from the city, with interests antagonistic to the city, at a time when it was his official duty to give legal counsel to the city with respect to those transactions. As an officer and agent of the city, he was not entitled to represent secretly a party claiming adversely to the city and to accept a fee for such service. A public officer may not make an unauthorized profit out of the particular public business which has been entrusted to his care. An agent stands in a fiduciary relationship to his principal, and if he makes a secret profit from the subject matter of his agency, the principal may recover such profit. (*Adams* v. *Herman,* 106 Cal.App.2d 92, 98-99 [234 P.2d 695]; *Steiner* v. *Rowley,* 35 Cal.2d 713, 717 [221 P.2d 9].)

 A general demurrer admits the material allegations of the pleading to which it is directed (*Steiner* v. *Rowley, supra.*) Count II alleges that Bender bought property from the city at one-fourth its value and that he received attorney's fees from both the city and Elbert, Ltd., while the undisclosed

agent of both parties. ▮▮ A faithless trustee must disgorge to his principal the secret profits and unauthorized benefits and advantages he has acquired as an outgrowth of the agency. (*Savage* v. *Mayer*, 33 Cal.2d 548, 551 [203 P.2d 9].) Having in his possession money and property rightfully belonging to the city which he received as secret profits from void transactions and from an undisclosed dual representation, Bender is required to account to the city for the benefits and profits so received. (*Schwarting* v. *Artel*, 40 Cal.App.2d 433, 441 [105 P.2d 380]; *Eaton* v. *Thieme*, 15 Cal.App.2d 458, 473 [59 P.2d 638].) Until such accounting is rendered and it is ascertained what balance, if any, is due him, Bender is not entitled to payment under his contract and clearly not to the full amount of the warrant. ▮▮ Section 601 of the 1948 Compton charter enjoins on the city council the duty of enforcing the charter. A taxpayer may sue in a representative capacity in cases involving the failure of a governmental body to perform a duty specifically enjoined. (*Pratt* v. *Security Trust & Sav. Bank*, 15 Cal.App.2d 630, 636 [59 P.2d 862]; *Schaefer* v. *Berinstein, supra*, p. 289.) The facts show not only a failure on the part of the city council to perform a specifically enjoined duty in its refusal to declare void Bender's transactions, but a willingness to compensate him after being informed of his violation of the charter and his derelictions of duty. Under such circumstances, plaintiff as a taxpayer has the capacity to maintain this action to enjoin the illegal expenditure and waste of city funds. (Code Civ. Proc., § 526a.)

### COUNT III

▮▮ As distinguished from Count II, which concerns itself with Bender's violation of the conflict of interest provisions and his breach of a fiduciary relationship, the third cause of action, after realleging the facts of the first and second counts, adds additional allegations which dwell on Bender's fraudulent misrepresentation of the law to the city council for the benefit of his private clients and to conceal his own acts of misfeasance. While there is an abundance of surplusage incorporated into this count, the following facts are alleged which state the essentials of a cause of action and demonstrate the impropriety of sustaining Bender's demurrer without leave to amend:

1. In 1953, Elbert, Ltd., a private client of Bender, received payments from the city treasurer as alleged holder of liens on property created by a 1911 bond issue. Bender

knowingly and intentionally failed to inform the city council of legislation and judicial decisions, of which he was aware, that Elbert's bond liens were presumably extinguished at the time of these payments. Bender falsely advised the city council with reference to payments to Elbert as lienholder for the purpose of promoting the interests of Elbert, which was then his client in connection with that matter.

2. In 1953, Bender falsely represented and exaggerated the rights to payments of certain holders of improvement bonds. Bender was at that time representing these bondholders, and misrepresented their rights for the purpose of furthering the interests of these private clients at the expense of the city, which he likewise represented.

3. Other instances are mentioned in which Bender is alleged to have misrepresented the state of the law relating to the rights of lienholders on tax-deeded property and to have concealed his representation of private clients having interests adverse to the city in their transactions with the city.

Accepting these facts as true, as we must, the third count *prima facie* establishes fraud on the part of Bender in the course of performance of his contract. ▉ Where parties occupy a confidential or fiduciary relationship, deception as to the state of the law constitutes a fraudulent representation. (*Bank of America* v. *Sanchez,* 3 Cal.App.2d 238, 242 [38 P.2d 787]; *Mathewson* v. *Naylor,* 18 Cal.App.2d 741, 744 [64 P.2d 979].) Condensed to its ultimate factors, the count alleges that because of Bender's knowing misrepresentation of law the city was intentionally led into a misapprehension of the rights of bondholders whom Bender represented and relied on such representations to its detriment. These are the essential elements of fraud. (*Schaefer* v. *Berinstein, supra,* p. 294.) ▉ Dependent on the character of the misconduct involved and the severability of the services rendered, an agent's fraud against his principal or some other serious breach of fealty on his part will defeat the agent's right to compensation either in whole or to an extent equivalent to the injury caused the principal by his offensive conduct. (3 C.J.S., Agency, § 182.) ▉ More significantly, it must not be overlooked that by virtue of his contract, Bender's relations to the city were governed by the code of ethics binding upon attorneys in their relation to a client. ''Misrepresentation of facts, practiced by an attorney as against his client, is conduct reprehensible in itself, and particularly so where it is used to perpetrate a fraud upon the client, or

to cover up antecedent misconduct.'' (6 Cal.Jur.2d, § 91, p. 245.) In *Clark* v. *Millsap,* 197 Cal. 765, 785 [242 P. 918], it is declared that ''a court may refuse to allow an attorney any sum as an attorney's fee if his relations with his client are tainted with fraud. 'Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered, as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of his duties' [citation].'' We need not pass on whether the misconduct ascribed to Bender under the pleadings would disentitle him to any compensation; suffice it to say that because of the alleged fraud he would not be entitled to the full compensation embodied in the warrant.

### LACHES AND WAIVER

An additional ground of demurrer was the laches of plaintiff. This is without merit. The instant action is for the limited purpose of enjoining payment of a warrant. The warrant was approved on or about January 4, 1955. This suit was filed the following day to enjoin its payment. It would be difficult to conceive of greater alacrity. Regardless of other forms of relief that might have been pursued, as a taxpayer availing himself of section 526a of the Code of Civil Procedure to enjoin an illegal payment, plaintiff's cause of action commenced upon the city council's approval of the warrant, when such payment became a threatened possibility.

 Another ground of demurrer was that the complaint discloses that the city council has waived any claim against Bender for his alleged wrongdoing. As has been noted, Bender's alleged conduct in purchasing property secretly from the city was a violation of the charter provisions. Laws of this nature are for the protection of the public by promoting honesty in governmental affairs. Public policy requires that the duties imposed by statute be discharged; therefore the requirements of a law or ordinance enacted for a public reason may not be waived by an official or a governmental body. (Civ. Code, § 3513; *Western Surgical Supply Co.* v. *Affleck,* 110 Cal.App.2d 388, 392-393 [242 P.2d 929]. See *Panzer-Hamilton Co.* v. *Bray,* 96 Cal.App. 460, 464 [274 P. 769].)

Plaintiff's fourth cause of action realleges the facts of the first and second causes of action. It is a mere restatement and duplication of those previous causes of action and relies

on the same ultimate facts without adding other allegations of fact. Upon argument plaintiff has conceded that this count may be dismissed if the others are upheld as stating causes of action. This count is obviously surplusage. It may properly be dismissed by the trial court.

The judgment is reversed.

Moore, P. J., and Ashburn, J., concurred.