In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-3204

JONATHAN ARNOLD,

*Plaintiff-Appellant,*

*v.*

LETICIA VILLARREAL,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 7399 — **Amy J. St. Eve**, *Judge.*

_____

ARGUED MARCH 29, 2016 — DECIDED APRIL 6, 2017

_____

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In the fall of 2004, Jonathan Arnold and Leticia Villarreal exchanged marriage vows in California in a ceremony solemnized by a priest and a rabbi. But they failed to file their marriage license with the county recorder within 10 days of the ceremony as required by California law. Shortly before the license expired, the county recorder

sent a letter informing them that the license had not yet been filed and reminding them that they needed to file it to complete the legal process. The couple did nothing and the license expired unfiled.

Although they were not legally married, the couple remained together for about three years, had a child, and purchased a condo in California. By the summer of 2007, their relationship had deteriorated, and they separately filed for divorce—she in California, he in Illinois. The divorce proceedings were terminated when they stipulated that they were never married.

Arnold then sued Villarreal in federal court in Chicago on various fraud theories. He claimed that she tricked him into believing the two were legally married to induce him to give her gifts, including the California condo. The district court entered summary judgment for Villarreal, characterizing the suit as "frivolous." Frivolous is an apt description. First, the undisputed facts show that Villarreal told Arnold early on that she suspected they weren't legally married. Indeed, she insisted that they get a new marriage license and do the whole thing over. They obtained a new license but did nothing further.

Second, even if we accept that at some point along the way Villarreal lulled Arnold with reassurances that they were legally married, Arnold was not justified in relying on her representations. He knew, because the county recorder had told them in writing, that the marriage license had not been filed as required by California law. Accordingly, we affirm the district court's judgment. We also grant Villarreal's motion for sanctions against Arnold for filing a frivolous appeal.

## I. Background

Arnold and Villarreal met in 2003. In January 2004 Arnold proposed marriage and Villarreal accepted. On October 1, 2004, the couple applied for and received a marriage license from the Los Angeles County recorder's office. The license was valid through December 30, 2004. On November 21 they held a wedding ceremony in the picturesque resort town of Dana Point. Father Erwin Castro, one of two clergymen who participated in the ceremony (the other was a rabbi), signed the couple's marriage license but failed to complete and file it. He did not fill in the date and location of the ceremony; he did not obtain a witness's signature; and he failed to perform his statutory duty to return the completed license to the county recorder within 10 days of the ceremony. *See* CAL. FAM. CODE § 359(e) (requiring the person solemnizing the marriage to return the license to the county recorder "within 10 days after the ceremony"). Arnold accuses Villarreal of taking the marriage license away from Castro. Villarreal disputes this, but the key fact is undisputed: the completed marriage license was never filed with the recorder's office.

On December 27 the couple received a letter from the recorder's office informing them that their license had not yet been returned for filing and would expire on December 30. The letter urged them to immediately address the matter and reminded them that filing a completed license was essential to protect their "marital and property rights." The couple took no action in response to the letter.

In mid-2005 as the couple anticipated the birth of their first child, Villarreal grew uneasy about the validity of their marriage and told Arnold that she thought their failure to

file the marriage license meant that they weren't legally married. Arnold dismissed her concerns. Nevertheless, in an attempt to appease her, Arnold agreed to a do-over. In August 2005 they applied for and received another marriage license. Remarkably, they again failed to follow through, and a completed marriage license was never filed.

Villarreal gave birth to their baby on August 21, 2005. About eight months later Arnold signed a power of attorney in favor of Villarreal, which she used to obtain financing and purchase a California condominium in both their names. The loan and purchase documents refer to the pair as a married couple. Arnold later transferred his interest in the condo to Villarreal. He claims he gave her the condo—as well as other gifts—only because he believed they were married.

After nearly three years, the couple's relationship began to disintegrate and they separated. In the summer of 2007, they filed separate divorce petitions—Arnold in Illinois and Villarreal in California. They eventually stipulated that they were never legally married, and the divorce proceedings were terminated.[1]

Apparently unwilling to leave the matter there, Arnold sued Villarreal in federal court in Illinois alleging various fraud claims and seeking compensatory damages totaling about $1 million and another $1 million in punitive damages. He accused Villarreal of tricking him into giving her his property by misrepresenting that they were lawfully married. Villarreal moved for summary judgment, initially taking the position that Arnold's fraud suit failed because he

---

[1] The California court retained jurisdiction over the parties' dispute concerning custody of their child.

wasn't deceived about anything: they really *were* validly married under California law. The district judge stayed the case while Villarreal returned to California state court to try to undo her stipulation. The state court refused to vacate its judgment.

Once the California court had spoken, the district judge lifted the stay, and Villarreal again moved for summary judgment. This time she argued that Arnold's fraud suit failed because he could not have justifiably relied on any misrepresentations she might have made about the legal validity of their marriage. Arnold responded on the merits and also sought time for additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure.

Judge John Grady, the district judge initially assigned to the case, granted Villarreal's motion and denied Arnold's Rule 56(d) request. The judge rejected Arnold's argument that he justifiably relied on Villarreal's representations as both "preposterous" on its face and utterly belied by the undisputed record evidence. The judge also held that "[n]o amount of discovery would remedy the flaws in Arnold's frivolous theory."

Arnold moved to alter the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. He argued that the court had failed to consider all of the relevant evidence in the record. Meanwhile, in anticipation of Judge Grady's retirement, the case was administratively transferred to Judge Amy St. Eve. She denied the Rule 59(e) motion, agreeing with Judge Grady that "[t]he undisputed facts amply demonstrate that Arnold's claims are frivolous."

Although his claims had been deemed frivolous by not one but two district judges, Arnold nevertheless filed this appeal. Villarreal responded on the merits and moved for sanctions against Arnold for filing a frivolous appeal.

## II. Discussion

The parties agree that California law applies to Arnold's claims, so to the extent that the appeal entails a dispute about the law, our task is to predict how the Supreme Court of California would resolve it.[2] *See BMD Contractors, Inc. v. Fid. & Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012).

As relevant here, Arnold invokes three different provisions of California law: California Civil Code sections 1709 (fraudulent deceit), 1572 (actual fraud), and 1573 (constructive fraud). We do not need to analyze these claims separately. Each one requires Arnold to prove that he justifiably relied on Villarreal's misrepresentations regarding the validity of their marriage. *Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127, 1135 (Cal. 2009) (fraudulent deceit); *Chi. Title Ins. Co. v. Superior Court*, 220 Cal. Rptr. 507, 513 (Cal. Ct. App. 1985) (actual fraud and constructive fraud). Given the undisputed facts, Arnold cannot prevail on this common element of his fraud claims.

---

[2] Subject-matter jurisdiction is secure under 28 U.S.C. § 1332 because (1) Arnold and Villarreal are citizens of different states and (2) the "domestic relations" exception to diversity jurisdiction doesn't apply. Arnold brings fraud claims; the case doesn't fall within the domestic-relations exception just because his factual allegations touch on the subject of marriage. *See Friedlander v. Friedlander*, 149 F.3d 739, 740–41 (7th Cir. 1998).

We begin, however, by noting the distinct possibility that Arnold's claims are categorically barred as a matter of law. California courts follow the general rule that one may never justifiably rely on a representation of law (as opposed to a representation of fact) because the law is equally accessible to all. *See Cicone v. URS Corp.*, 227 Cal. Rptr. 887, 891 (Cal. Ct. App. 1986); 5 WITKIN, SUMMARY OF CAL. LAW (10TH), TORTS § 779 (2005); *accord Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 765 (7th Cir. 2013) (explaining the rationales commonly given for the rule). The misrepresentations alleged here appear to be legal in nature: Arnold claims that Villarreal misled him about the legal status of their relationship and the legal consequences of their failure to file their marriage license with the county recorder.

The general rule is subject to a "fiduciary relationship" exception, however, and the exception might apply here. 37 AM. JUR. 2D *Fraud and Deceit* § 103 (2016). Arnold and Villarreal did not have a literal fiduciary relationship, but California courts appear to have extended the fiduciary exception to a broader category of "confidential relationships." *Cicone*, 227 Cal. Rptr. at 891; *Bank of Am. v. Sanchez*, 38 P.2d 787, 789 (Cal. Ct. App. 1934) (stating that the exception "has been extended to every possible case in which a fiduciary relation exists as a fact[,] … [including] moral, social, domestic, or merely personal [relationships]"). And there is some indication that Arnold and Villarreal's relationship would be considered "confidential" in the sense meant by California law. *See Spellens v. Spellens*, 305 P.2d 628, 643 (Cal. Ct. App. 1956) (holding that a jury could reasonably find that parties who were engaged to be married occupied "a confidential relationship"), *vacated on other grounds*,

*Spellens v. Spellens*, 317 P.2d 613 (Cal. 1957); *Mathewson v. Naylor*, 64 P.2d 979 (Cal. Ct. App. 1937) (same).

We're hesitant to go further down this road. The parties haven't briefed this possible legal barrier to Arnold's claims, and the California cases on this doctrine are fairly old. Ultimately, we have no need to predict how the California Supreme Court would construe the "confidential relationship" exception on these facts. Arnold's fraud claims clearly fail for a different reason.

California law holds that a plaintiff cannot justifiably rely on a misrepresentation when his own conduct is manifestly unreasonable "in the light of his own intelligence and information." *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 609 (Cal. 1995) (en banc) (quotation marks omitted). Whether the plaintiff has acted so unreasonably that recovery should be denied is normally a jury question, but it "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Id.* (quotation marks omitted).

It's undisputed that Arnold knew the marriage license was never filed with the recorder's office as required by state law. He received the recorder's letter to that effect and did nothing to rectify the problem. Moreover, as the birth of their child approached, Villarreal told Arnold that she was worried that they weren't legally married, so they restarted the process by applying for a new marriage license. The county recorder issued the new license, but the couple did nothing to follow through and it too expired. On these facts Arnold's claim that he justifiably relied on Villarreal's later affirmations of the validity of their marriage is manifestly

unreasonable.[3] Judge Grady properly entered summary judgment for Villarreal.

For the same reason, Judge Grady's rejection of Arnold's Rule 56(d) motion for additional discovery was eminently sound. A district judge may delay consideration of a summary-judgment motion and order additional discovery if the requesting party demonstrates that "it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). We review these orders deferentially, for abuse of discretion only. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622–23 (7th Cir. 2014).

Judge Grady was clearly right to deny Arnold's Rule 56(d) motion. As the judge aptly put it, "[n]o amount of discovery would remedy the flaws in Arnold's frivolous theory." The undisputed evidence already in the record established beyond question that any reliance by Arnold was manifestly unreasonable based on what he knew about his own failure to ensure that the marriage license was properly completed and timely filed.

Finally, Villarreal has moved for sanctions under Rule 38 of the Federal Rules of Appellate Procedure, which authorizes us to award "just damages and single or double costs" against an appellant for filing a frivolous appeal. An appeal is frivolous "when the result is obvious or when the appel-

---

[3] Arnold harps on two entirely irrelevant facts: (1) Villarreal held herself out as his wife when she purchased the California condo; and (2) she argued in her first summary-judgment motion that they were legally married. That Villarreal may have kept innocent third parties in the dark (e.g., the seller of the condo, the mortgage lender, the court) does not bear on the question whether Arnold's alleged reliance was justified given what he himself knew.

lant's argument is wholly without merit." *Harris N.A. v. Hershey*, 711 F.3d 794, 802 (7th Cir. 2013) (quotation marks omitted). That describes this appeal.

Rule 38 sanctions are discretionary, not mandatory. *Id.* But Arnold's appeal is precisely the kind for which an award of sanctions is most appropriate. He filed it after two district judges had characterized his suit as frivolous. There is *no* theory of justifiable reliance that could overcome the undisputed fact that he knew his marriage license was never properly completed and filed as required by California law. Arnold's appeal simply rehashes his allegation that Villarreal assured him that the marriage was legally valid and repeats bromides about the court's obligation to draw all inferences in his favor. He appears to think that catching Villarreal in a lie is enough to entitle him to relief. It is not. Arnold has utterly failed to confront what two district judges recognized: that his fraud claims are not merely meritless but are frivolous. We are left with the distinct impression that he prosecuted this appeal simply to harass Villarreal. As Judge Grady drily noted, the courts "are not a proper venue for petty score-settling."

Accordingly, Villarreal may submit, within 28 days, an affidavit and supporting papers specifying the damages she incurred in this frivolous appeal. Arnold's response is due within 28 days of Villarreal's submission.

AFFIRMED; RULE 38 SANCTIONS ORDERED.